UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>AEROTECH MIAMI INC. d/b/a iAero Tech, *et al.*,[1]<br><br>Debtors. | Chapter 7 Cases<br><br>Case No. 23-17503-RAM<br><br>(Jointly Administered) |

**MOTION OF THE DEBTORS
FOR THE ENTRY OF AN ORDER (A) AUTHORIZING CERTAIN
TRANSFERS FROM THE CARVE-OUT RESERVE, (B) TERMINATING
THE CARVE-OUT RESERVE AND DISCHARGING AND RELEASING BERGER
SINGERMAN LLP, IN ITS CAPACITY AS THE ADMINISTRATOR OF
THE CARVE-OUT RESERVE, AND (C) GRANTING RELATED RELIEF**

**Hearing Requested on July 9, 2024**

**It is respectfully requested that a hearing be held
on this Motion on July 9, 2024 at 10:00 a.m. (ET), which is the date
and time that a hearing has already been scheduled in these bankruptcy cases.**

The above-captioned debtors (collectively, the "Debtors"), by and through their

undersigned chapter 11 counsel, file this motion (the "Motion") seeking the entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the

following transfers from the carve-out reserve (the "Carve-Out Reserve" or the "Professional

Fee Escrow") created under paragraph 15(c) of the *Final Order (I) Authorizing Debtors to (A)*

*Obtain Postpetition Secured Financing and (B) Use Cash Collateral, (II) Granting Adequate*

*Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV)*

---

[1] The address of the Debtors is Scott N. Brown, Esq., chapter 7 trustee, c/o Bast Amron LLP, One Southeast Third Ave., Ste. 2410, Miami, FL 33131. The last four digits of the Debtors' federal tax identification numbers are: (i) AeroTech Miami Inc. d/b/a iAero Tech (2242); (ii) AeroThrust Delta PBH, LLC (6675); (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC (4451); (iv) AeroThrust Holdings Leasing, LLC (0152); (v) iAero 11 Investments LLC (9894); (vi) iAero 11B Investments LLC (6126); (vii) iAero Group Bidco Inc. (3777); (viii) iAero Group Holdco 6 LLC (6980); (ix) iAero Group Intermediate Inc. (4712); (x) iAero Group Parent LLC (0962); (xi) iAero Thrust Engine Test Center, LLC (3908); (xii) iAero Thrust LLC (8261); (xiii) JAM Aerospace Parts, LLC (2331); (xiv) New Swift Air Holdings, L.L.C. (7373); (xv) Swift Air, L.L.C. d/b/a iAero Airways (2506); and (xvi) Swift Air Travel, LLC (3558).

13046521-7

*Modifying the Automatic Stay and (V) Granting Related Relief* [ECF No. 191] (as amended, the "Final DIP Order"),[2] (i) $264,000.00 (the "Chapter 7 Trustee Transfer"), representing a transfer made to Scott N. Brown, in his capacity as the chapter 7 trustee (the "Chapter 7 Trustee"), on May 6, 2024,[3] (ii) $253,832.31, or the final collective, unobjected-to, amount due for the 16 debtors as reflected on the Chapter 11 Quarterly Fee Information and Collection System (FICS)) (the "Final U.S. Trustee Fee Transfers"), representing transfers to the U.S. Trustee program (the "U.S. Trustee Program") for the final quarterly U.S. Trustee fees due for the 16 Debtors for the second quarter, 2024 (the "Final U.S. Trustee Fees"), (iii) $40,394.45 (the "Kroll Transfer"), representing the final amount due in the Chapter 11 Cases (defined herein) to Kroll Restructuring Administration LLC ("Kroll"), which served as the noticing, claims and solicitation agent in the Chapter 11 Cases, (iv) $98,900.00 (collectively, the "Former Employee Compensation Transfers"), representing wages due to six former employees of the Debtors (collectively, the "Former Employees") with respect to work they did post-conversion to enable the chapter 11 Debtors to fulfill their Court-ordered filing obligations under paragraphs 6(b) and (c) of the *Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [ECF No. 625] (the "Agreed Conversion Order") as well as to timely prepare and file the final monthly operating reports for each of the 16 Debtors covering the period April 1-30, 2024 [ECF Nos. 675-690, 706] (the "Final MORs"), and (v) $200,000.00 (the "Synovus Reversionary Transfer", and together with the Chapter 7 Trustee Transfer, Final U.S. Trustee Fee Transfers, Kroll Transfer, and Former Employee Compensation Transfers, collectively, the

---

[2] The Final DIP Order was amended by the: (i) *Order (I) Authorizing the Debtors to Enter Into the First Amendment to the DIP Credit Agreement and (II) Granting Related Relief* [ECF No. 412] (the "Supplemental DIP Order"); and (ii) *Order (I) Authorizing the Debtors to Enter into the Second Amendment to the DIP Credit Agreement and (II) Granting Related Relief* [ECF No. 500] (the "Second Supplemental DIP Order").

[3] The Debtors request retroactive authorization with respect to the Chapter 7 Trustee Transfer.

2

13046521-7

"Transfers"), representing the agreed-upon reversionary transfer obligation to Synovus Bank ("Synovus", and together with the Chapter 7 Trustee, U.S. Trustee Program, Kroll, and the Former Employees, collectively, the "Recipients") under paragraph 39(b) of the *Order (I) Approving Stalking Horse APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens Except for Permitted Liens and Assumed Liabilities, and (III) Granting Related Relief* [ECF No. 602] (the "Sale Order"); (b) terminating the Carve-Out Reserve and discharging and releasing Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve; and (c) granting related relief, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' bankruptcy cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      The legal predicates for the relief requested herein are: (i) sections 105, 363, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) rules 2002, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (iii) rule 2002-1 of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"); (iv) the Final DIP Order; (v) the Sale Order; and (vi) the Agreed Conversion Order.

## RELIEF REQUESTED

3.      By this Motion, the Debtors seek the entry of an Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Transfers from the Carve-Out Reserve to the

3

13046521-7

Recipients, (ii) terminating the Carve-Out Reserve and discharging and releasing Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve, and (iii) granting related relief.

## PROCEDURAL BACKGROUND

4. On September 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5. On October 3, 2023, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases [ECF No. 145] (the "Committee").

6. On September 29, 2023, the Debtors filed the *Debtors' Motion for Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals* [ECF No. 108] (the "Interim Compensation Motion"). The Interim Compensation Motion sought authorization to establish procedures for monthly and interim compensation and reimbursement of expenses for the professionals retained in the Chapter 11 Cases.

7. On October 16, 2023, the Court entered the *Order Granting Debtors' Motion for Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals* [ECF No. 186] (the "Interim Compensation Order"). The Interim Compensation Order granted the Interim Compensation Motion and approved the interim compensation procedures.

8. On April 12, 2024, the Debtors filed their *Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy* [ECF No. 601] (the "Agreed Conversion Motion").

4

13046521-7

9.      On May 1, 2024, the Court entered the Agreed Conversion Order [ECF No. 625].

10.     On that same date, the U.S. Trustee appointed Scott N. Brown as the Chapter 7 Trustee [ECF No. 626].

11.     On June 24, 2024, the Debtors filed the *Notice of Filing of (I) Summary of Final Fee Applications & Motion, and (II) Transfers to be Made from the Carve-Out Reserve (a/k/a the Professional Fee Escrow) Created Under the Final DIP Order [ECF No. 191]* [ECF No. 718] (the "Notice").  Attached to the Notice are two exhibits, including (i) Exhibit A, representing a summary with respect to the final fee applications filed by the bankruptcy professionals representing the Debtors and the Committee in the Chapter 11 Cases [ECF Nos. 657, 658, 659, 663, 664, 665, and 707] and a separate motion filed by AP Services, LLC, seeking approval of a "Completion Fee" (defined therein) [ECF Nos. 661, 698], to be heard by the Court at the hearing scheduled on July 9, 2024 at 10:00 a.m. (prevailing Eastern Time) [ECF No. 666], and (ii) Exhibit B, detailing the proposed remaining transfers to be made from the Carve-Out Reserve (a/k/a the Professional Fee Escrow) created pursuant to the Final DIP Order.  The Notice, including the Exhibits A and B attached thereto, are incorporated by reference herein.

12.     For a detailed description of the chapter 11 Debtors, the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure, the undersigned respectfully refer the Court and parties-in-interest to the *Declaration of Kevin Nystrom in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 66] (the "First Day Declaration"), which is incorporated herein by reference.

## THE CARVE-OUT RESERVE

13.     The Carve-Out Reserve was created under ¶15(c) of the Final DIP Order as a part of the carve-out (as defined in ¶15(a) of the Final DIP Order, the "Carve-Out") to pay: (i) the

5

13046521-7

accrued and unpaid fees and expenses approved by the Court (as defined in ¶15(a) of the Final DIP Order, the "Allowed Professional Fees") of professionals retained by either the Debtors or the Committee pursuant to sections 327, 328 or 363 of the Bankruptcy Code (as defined in ¶15(a) the Final DIP Order, the "Professional Persons")[4] and (ii) all fees required to be paid to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (as defined in ¶15(a) of the Final DIP Order, the "U.S. Trustee Fees").

14.     Berger Singerman LLP serves as the administrator of the Carve-Out Reserve. *See* Final DIP Order ¶15(c).

15.     Specifically, ¶15(c) of the Final DIP Order states in full, as follows:

(c) Carve-Out Reserve.  On a weekly basis, on the first Business Day of such week, the Debtors shall fund from the DIP Facility or cash on hand into a segregated account (the "Carve-Out Reserve") maintained by Berger Singerman LLP and held in trust for the exclusive benefit of Professional Persons and, solely for purposes of the U.S. Trustee Fees held therein, the U.S. Trustee, an amount equal to the estimated amounts included in the Approved Budget for such upcoming week for (i) U.S. Trustee Fees and (ii) fees and expenses of Professional Persons (collectively, the "Estimated Fees"); provided, however, that nothing in this Final Order shall limit the amount of U.S. Trustee Fees or Clerk's Fees that are due and payable, or limit the liability of the Debtors' estates to pay all U.S. Trustee Fees or Clerk's Fees that are due and payable, or limit the source from which such U.S. Trustee Fees or Clerk's Fees may be paid. **The Debtors may use funds held in the Carve-Out Reserve to pay U.S. Trustee Fees and Clerk's Fees as they become due and payable, and shall otherwise use funds held in the Carve-Out Reserve exclusively to pay Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of this Court; provided that when all obligations included within the Carve-Out have been paid in full in connection with any orders of the Court granting**

---

[4] The "Professional Persons" include the following professionals retained by either the Debtors or the Committee, pursuant to sections 327, 228 or 363, in the Chapter 11 Cases: (i) King & Spaulding LLP, lead counsel to the chapter 11 Debtors; (ii) Berger Singerman LLP, co-counsel to the chapter 11 Debtors; (iii) Jefferies LLC, investment banker to the chapter 11 Debtors; (iv) AP Services, LLC, which provided the interim Chief Executive Officer (Mr. Kevin Nystrom) and support personnel to the chapter 11 Debtors; (v) Greenberg Traurig, P.A., counsel to the Committee; (vi) Force 10 Partners, LLC, financial advisors to the Committee; and (vii) Genesis Credit Partners LLC, financial advisors to the Committee.  Kroll was retained as the chapter 11 Debtors' noticing, claims and solicitation agent pursuant to 28 U.S.C. § 156(c), Federal Bankruptcy Rule 2002 and Local Rule 2002-1(B) [ECF No. 78].

13046521-7

**final fee applications, the DIP Agent and the Prepetition Agents, each on behalf of itself and the relevant secured parties, shall have a security interest upon any residual interest in the Carve-Out Reserve**. Funds transferred to the Carve-Out Reserve shall be subject to the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Claims granted hereunder solely to the extent of such reversionary interest; provided further that, for the avoidance of doubt, such liens and claims shall be subject in all respects to the Carve-Out.

*See* Final DIP Order, ¶15(c) (emphasis supplied.)

16. Pursuant to the Final DIP Order (as amended), Synovus has the right to seek return to it of any unused funds remaining in the Carve-Out Reserve (*i.e.*, such funds, which are part of the Carve-Out, do not represent property of the chapter 7 estates).

17. In compliance with the Final DIP Order, the Debtors would regularly wire funds during the Chapter 11 Cases to Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve, with instructions to make accounting entries in the Carve-Out Reserve reconciliation to allocate certain amounts to each of the Professional Persons and Kroll.

18. In compliance with the (i) Interim Compensation Order, (ii) separate orders of the Court granting the Debtors' requests to retain Jefferies LLC [ECF No. 182], AP Services, LLC [ECF Nos. 86, 181] and Kroll [ECF No. 78], and (iii) orders of the Court approving the first interim fee applications [ECF Nos. 521, 522, 523, 549 and 550], the Debtors authorized transfers during the Chapter 11 Cases to the Professional Persons and Kroll which were processed through the Carve-Out Reserve.

19. With respect to U.S. Trustee Fees, the Debtors in the Chapter 11 Cases would pay such amounts directly rather than undertaking an intermediary step of first wiring funds to the Carve-Out Reserve and paying such U.S. Trustee Fees therefrom.

20. On April 30, 2024, the Debtors wired the amount of $1.489 million (the "Final Wire") to Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve,

13046521-7

with instructions to allocate half of the amount of the Final Wire in the reconciliation to each of AP Services, LLC and Jefferies LLC, and to allocate such amounts to the other Professional Persons and Kroll to the extent such funds were not subsequently transferred, pursuant to a future order of the Court, from the Carve-Out Reserve to AP Services, LLC or Jefferies LLC.  The Final Wire was the final amount the Debtors sent to be deposited into the Carve-Out Reserve.

## THE REQUESTED RELIEF SHOULD BE GRANTED

**A.    The Court Should Retroactively Approve the Chapter 7 Trustee Transfer.**

21.    The Carve-Out under the Final DIP Order includes up to $100,000.00 with respect to the "reasonable fees and expenses" of the Chapter 7 Trustee.  *See* Final DIP Order, ¶15(a). The Sale Order increased such amount to $250,000.00.  *See* Sale Order, ¶37.  However, neither the Final DIP Order nor the Sale Order authorize the transfer of the $250,000.00 from the Carve-Out Reserve.  As such, no amounts had been allocated by the Debtors in the Carve-Out Reserve to make the Chapter 7 Trustee Transfer.

22.    At the same time, AP Services LLC (which provided the Debtors with Mr. Nystrom, as the Interim CEO, and support personnel) was informed by the Marsh USA LLC (the Debtors' insurance agent) that (i) there was an additional $13,238.75 due to various insurers with respect to premiums to secure tails on the Debtors' director and officer liability insurance policies and (ii) the $13,238.75 had to be paid not later than May 30, 2024, or else the insurance tails would be cancelled.  Due to the fact that the Conversion Date had already passed, only the Chapter 7 Trustee would be authorized to make the $13,238.75 in premium payments on behalf of the Debtors to Marsh USA LLC, but the Chapter 7 Trustee had no funds to make such payments.

23.    Both prior to, and after, the Conversion Date, the undersigned counsel have had numerous and substantial communications with the U.S. Trustee and the Chapter 7 Trustee in

13046521-7

order to initially plan for the conversion, as well as the transition, of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Pursuant to various discussions among the Debtors' counsel, AP Services, LLC, counsel for Synovus, the U.S. Trustee and the Chapter 7 Trustee, funds comprising the Chapter 7 Trustee Transfer ($264,000.00) were sent to the Chapter 7 Trustee on May 6, 2024, representing the sum of that part of the Carve-Out available to the Chapter 7 Trustee ($250,000.00) and an additional amount to cover the tail premiums due on the Debtors' director and officer liability insurance policies ($14,000.00).[5]

24.     The Debtors submit that, pursuant to the Final DIP Order, the Sale Order, and the Agreed Conversion Order, cause exists for the Court to retroactively authorize the Chapter 7 Trustee Transfer. First, the $250,000.00 Carve-Out for the Chapter 7 Trustee was specifically authorized by the Final DIP Order, as modified by the Sale Order. As the chapter 11 Debtors had not reserved and transferred the $250,000.00 to the Chapter 7 Trustee prior to the Conversion Date, the Carve-Out Reserve became the only source of funds from the Chapter 11 Cases to make such transfer. Also, the transfer of the $14,000.00 to the Chapter 7 Trustee to pay the remaining amount of tail premiums on the chapter 11 Debtors' director and officer liability policies materially assisted with the transition of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code by preserving an important asset which, subject to actions which may be taken by the Chapter 7 Trustee in the chapter 7 bankruptcy cases, may inure to the benefit of the creditors therein. Accordingly, the Debtors respectfully request the Court retroactively approve the Chapter 7 Trustee Transfer.

**B.     The Court Should Approve the Final U.S. Trustee Fee Transfers.**

25.     Pursuant to the Final MORs and discussions with the U.S. Trustee, the Debtors

---

[5] In an abundance of caution, the Debtors transferred $14,000.00, rather than the amount that Marsh USA LLC had indicated that remained due ($13,238.75), in order to provide the Chapter 7 Trustee a small additional amount in the event that Marsh USA LLC came back with additional fees and expenses due by May 30, 2024 on the insurance policy tails.

13046521-7

estimate that the amount of the Final U.S. Trustee Fee Transfers ($253,832.31), or whatever is the final collective, and unobjected-to, amount due for the 16 debtors as to be reflected on the Chapter 11 Quarterly Fee Information and Collection System (the "FICS"), will be due and owing, and the Debtors expect the FICS to reflect the requested final amounts due during early July, 2024.  As stated above, the Debtors directly paid U.S. Trustee Fees during the Chapter 11 Cases, rather than undertaking the intermediary step of first wiring funds to the Carve-Out Reserve and paying such U.S. Trustee Fees therefrom.  Accordingly, no funds are currently allocated in the Carve-Out Reserve to make the Final U.S. Trustee Fee Transfers.  Per the Final DIP Order, the Debtors are authorized to transfer funds in the Carve-Out Reserve to the U.S. Trustee Program to pay U.S. Trustee Fees.  In an abundance of caution, the Debtors request authorization to transfer the U.S. Trustee Transfers to the U.S. Trustee Program from the Carve-Out Reserve.

**C.      The Court Should Approve the Kroll Transfer.**

26.      As stated above, Kroll was retained as the noticing, claims, and solicitation agent in the Chapter 11 Cases pursuant to 28 U.S.C. § 156(c), Federal Bankruptcy Rule 2002 and Local Rule 2002-1(B) [ECF No. 78].  However, the Final DIP Order provides that the funds in the Carve-Out Reserve are to pay the Court-approved fees and expenses of Professional Persons retained pursuant to sections 327, 328 or 363 of the Bankruptcy Code.  *See* Final DIP Order, ¶15(a).  Accordingly, Kroll does not fall within the technical definition of a Professional Person. Throughout the Chapter 11 Cases, however, the Debtors (i) wired funds to the Carve-Out Reserve with instructions to allocate sums to Kroll in the Carve-Out Reserve and (ii) instructed funds be wired from the Carve-Out Reserve to Kroll to pay amounts due on Kroll's invoices. The final amount due to Kroll in the Chapter 11 Cases totals the Kroll Transfer ($40,394.45). Currently, no funds are specifically allocated in the Carve-Out Reserve to make the Kroll

10

13046521-7

Transfer.  Kroll is not required to file any fee applications with respect to the fees and expenses it incurred during the Chapter 11 Cases.

27.    Pursuant to discussions immediately prior to the Conversion Date among the undersigned counsel with Kroll, the U.S. Trustee, and the Clerk of the Court, these parties agreed to the undersigned counsel's suggestion that the local form conversion order be revised to have Kroll (rather than the Clerk of the Court) serve both the Agreed Conversion Order and the notice of the section 341 meeting of creditors and proof of claim in the chapter 7 cases ("341 Notice/PoC") on the entire creditor body and all other interested parties during early May. *See* Agreed Conversion Order, ¶9.  Kroll did so.  See ECF No. 653 (certificate of service).  Subsequently, Kroll informed the Debtors that the amount of the Kroll Transfer represented the net due for work Kroll undertook in the Chapter 11 Cases during April and May, and in particular, with respect to the separate, widespread service by Kroll, on the entire creditor body and all known interested parties, of the (i) Sale Order, (ii) Agreed Conversion Order, and (iii) 341 Notice/PoC.

28.    The Debtors submit that, pursuant to the order retaining Kroll [ECF No. 78], the Final DIP Order, and the Conversion Order, cause exists for the Court to authorize the Kroll Transfer ($40,394.45).  As an initial comment, there exists sufficient funds to make the Kroll Transfer in full from the Carve-Out Reserve.  Pursuant to discussions with the Debtors and/or the U.S. Trustee, and as reflected in Exhibits A and B of the Notice, several of the Debtors' professionals in the Chapter 11 Cases voluntarily agreed to reduce their fee requests by a combined total of almost $2.0 million.  As a result, the remaining amount in the Carve-Out Reserve is sufficient to pay the Kroll Transfer, as well as the remaining Transfers requested herein and the amounts requested by the other Professional Persons in their final fee applications, subject to Court approval.

11

13046521-7

29. In addition, the Debtors believe that arranging for Kroll, rather than the Clerk of the Court, to serve both the Agreed Conversion Order and the 341 Notice/PoC on the entire creditor body and all known interested parties immediately after the Conversion Date relieved the Clerk of the Court from a significant administrative and financial burden because such documents were served by Kroll on thousands of business entities and individuals. For these reasons, the Debtors respectfully request the Court to approve the Kroll Transfer.

**D.      The Court Should Approve the Former Employee Compensation Transfers.**

30. Pursuant to the Agreed Conversion Order, the Debtors were under extremely tight time deadlines to prepare and file a schedule of unpaid debts incurred during the Chapter 11 Cases (the "Unpaid Debts Schedule") and a schedule of receipts and distributions made during the Chapter 11 Cases (the "Receipts/Distributions Schedule"). Specifically, the Agreed Conversion Order imposed upon the Debtors the obligation to file with the Court the Unpaid Debts Schedule within 14 days of the Conversion Date (*i.e.*, not later than May 15, 2024) and the Receipts/Distributions Schedule within 30 days of the Conversion Date (*i.e.*, not later than May 31, 2024). As detailed in the First Day Declaration and the record of the Chapter 11 Cases, including the monthly operating reports filed by the Debtors, the Debtors operated the largest business-to-business air charter airline in the United States with a fleet of forty-two passenger and cargo aircraft which serviced customers both domestically and internationally, and which had gross receipts in the hundreds of millions of dollars. *See* First Day Declaration, ¶¶9, 21. In other words, the Debtors' operations were massive and complicated.

31. Shortly after the Conversion Date, it was learned that the Debtors had not reserved any funds to hire former employees to prepare the Court-ordered filings under the Agreed Conversion Order or the Final MORs. Pursuant to discussions among the undersigned counsel with William Garrett, who served as the Chief Financial Officer of iAero Airways, and

12

13046521-7

Mr. Nystrom (the Debtors' former Interim CEO), Mr. Garrett agreed to assemble a small team of the Debtors' former employees to prepare the Unpaid Debts Schedule, the Receipts/Distributions Schedule, and the Final MORs.

32.    Prior to commencing work, Mr. Garrett provided an original estimate of the wages expected to be incurred by the Employee associated with completing these three projects. After such projects were completed, Mr. Garrett submitted a revised statement reflecting the actual wages incurred by each Employee which showed that the three projects had been done under budget.    Both the original estimate and the final amounts of the Former Employee Compensation Transfers were approved by Mr. Nystrom.  The Former Employees, the titles they held during the Chapter 11 Cases, and the proposed wage payments to each Employee that together comprise the Former Employee Compensation Transfers ($98,900.00), include: (i) William Garrett (Chief Financial Officer; $24,000.00); (ii) Douglas E. Meadows (Corporate Controller; $24,600.00); (iii) James Lavelle (Chief Accounting Officer; $32,000.00); (iv) Brandon Keszler (Senior Director of Information Technology; $7,200.00); (v) Michael Lewis (V.P. of Human Resources; $1,500.00); and (vi) Nicholas Huska (Director of Finance & Accounting; $9,600.00).

33.    The Debtors submit that, pursuant to the Final DIP Order and the Agreed Conversion Order, cause exists for the Court to authorize the Former Employee Compensation Transfers.  The Debtors were under a Court order to prepare and file the Unpaid Debts Schedule by May 15, 2024, and the Receipts/Distributions Schedules by May 31, 2024.  The Debtors would not have been able to do so without the assistance of the Former Employees who had extensive knowledge of the Debtors' operations and systems and who could not be asked to work without being compensated.  Due to the hard work expeditiously completed by these six Former Employees, the Debtors were able timely to comply with their Court-ordered reporting

13

13046521-7

requirements under the Agreed Conversion Order as well as to file the Final MORs by May 30, 2024. *See* ECF Nos. 655, 656, 675-690, and 692. Accordingly, the Debtors respectfully request that the Court approve the Former Employee Compensation Transfers.

**E.      The Court Should Approve the Synovus Reversionary Transfer.**

34.      As a part of the negotiations between the Debtors and Synovus which resulted in the entry of the Sale Order by the Court on April 13, 2024, the Debtors' professionals agreed that $200,000.00 of the funds in the Carve-Out Reserve would be returned to Synovus (*i.e.*, the Synovus Reversionary Transfer). *See* Transcript of Hearing held on 4-8-24, p. 37 @ 23 to 38 @ 25; Transcript of Hearing held on 4-10-24, pp. 14 @ 19-24; 15 @ 11-16. Such agreement between the Debtors' professionals and Synovus is reflected in paragraph 39.b. of the Sale Order. However, no funds are currently allocated in the Carve-Out Reserve to make the Synovus Reversionary Transfer.

35.      The Debtors submit that Sale Order authorizes the Synovus Reversionary Transfer ($200,000.00). Pursuant to the Final DIP Order (as amended), Synovus is now the sole party that has the security interest in any residual funds remaining in the Carve-Out Reserve. Second, the Sale Order provides that the Debtors' professionals have agreed that, after all of the transfers are made from the Carve-Out Reserve, the Synovus Reversionary Transfer will be made to Synovus. Third, as reflected in the Notice, certain of the Debtors' professionals have significantly reduced their requested fee amounts which will allow other bankruptcy professionals retained by the Debtors or the Committee to be paid sums from the Carve-Out Reserve pursuant to this Motion, or pursuant to their respective final fee applications, both subject to Court approval, as well as payment in full of the Final U.S. Trustee Fees, with $200,000.00 remaining therein to make the Synovus Reversionary Transfer. Accordingly, the Debtors respectfully request the Court to authorize the Debtors to make the Synovus Reversionary Transfer.

13046521-7

**F.      The Court Should Authorize the Debtors to Terminate the Carve-Out Reserve and to Discharge and Release Berger Singerman LLP, in Its Capacity as the Administrator of the Carve-Out Reserve.**

36.      Finally, the Debtors request authorization for Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve, to terminate the Carve-Out Reserve after all Court-approved transfers are made from it, and to discharge and release Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve. After such transfers are made from the Carve-Out Reserve, Berger Singerman LLP will have fulfilled its role as the administrator of the Carve-Out Reserve. Accordingly, the Debtors respectfully request that the Court (i) authorize Berger Singerman to terminate the Carve-Out Reserve after the final amounts are transferred out of it to the Recipients and the remaining Professional Persons with respect to their final fee applications, subject to Court approval, and (ii) to discharge and release Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve.

**G.      Synovus Does Not Oppose the Relief Sought in the Motion.**

37.      The Debtors' counsel has communicated with counsel for Synovus and is informed that Synovus does not oppose the relief sought in this Motion.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request the Court (i) to grant this Motion, (ii) to enter the Order, in substantially the form attached hereto as **Exhibit A**, authorizing the Transfers to the Recipients from the Carve-Out Reserve, to terminate the Carve-Out Reserve after the final amounts are transferred out of it, and to discharge and release Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve;

[This section intentionally left blank]

15

13046521-7

and (iii) to grant any such other relief as may be appropriate under the circumstances.

Dated:  June 25, 2024

Respectfully submitted,

*/s/ Christopher Andrew Jarvinen*

**KING & SPALDING LLP**
*Co-Counsel for the Chapter 11 Debtors*
Michael Fishel (admitted *pro hac vice*)
1100 Louisiana Suite 4100
Houston, TX 77002
Telephone: (212) 790-5259
Email:  mfishel@kslaw.com

**BERGER SINGERMAN LLP**
*Co-Counsel for the Chapter 11 Debtors*
Paul Steven Singerman
Florida Bar No. 378860
Christopher Andrew Jarvinen
Florida Bar No. 21745
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  cjarvinen@bergersingerman.com
        singerman@bergersingerman.com

16

13046521-7

## **EXHIBIT A**

17

13046521-7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| AEROTECH MIAMI INC. d/b/a iAero Tech, *et al.*,[1] | Case No. 23-17503 |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING
MOTION OF THE DEBTORS
FOR THE ENTRY OF AN ORDER (A) AUTHORIZING CERTAIN
TRANSFERS FROM THE CARVE-OUT RESERVE, (B) TERMINATING
THE CARVE-OUT RESERVE AND DISCHARGING AND RELEASING BERGER
SINGERMAN LLP, IN ITS CAPACITY AS THE ADMINISTRATOR OF
THE CARVE-OUT RESERVE, AND (C) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court for hearing on the ___ day of July, 2024 at ____

---

[1] The address of the Debtors is Scott N. Brown, Esq., chapter 7 trustee, c/o Bast Amron LLP, One Southeast Third Ave., Ste. 2410, Miami, FL 33131. The last four digits of the Debtors' federal tax identification numbers are: (i) AeroTech Miami Inc. d/b/a iAero Tech (2242); (ii) AeroThrust Delta PBH, LLC (6675); (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC (4451); (iv) AeroThrust Holdings Leasing, LLC (0152); (v) iAero 11 Investments LLC (9894); (vi) iAero 11B Investments LLC (6126); (vii) iAero Group Bidco Inc. (3777); (viii) iAero Group Holdco 6 LLC (6980); (ix) iAero Group Intermediate Inc. (4712); (x) iAero Group Parent LLC (0962); (xi) iAero Thrust Engine Test Center, LLC (3908); (xii) iAero Thrust LLC (8261); (xiii) JAM Aerospace Parts, LLC (2331); (xiv) New Swift Air Holdings, L.L.C. (7373); (xv) Swift Air, L.L.C. d/b/a iAero Airways (2506); and (xvi) Swift Air Travel, LLC (3558).

13046521-7

a.m./p.m. in Miami, Florida (the "Hearing") upon the *Motion of the Debtors for the Entry of an Order (A) Authorizing Certain Transfers from the Carve-Out Reserve, (B) Terminating the Carve-Out Reserve and Discharging and Releasing Berger Singerman LLP, in Its Capacity as the Administrator of the Carve-Out Reserve, and (C) Granting Related Relief* [ECF No. ___] (the "Motion").[2]   In the Motion, the Debtors request the entry of an order authorizing certain Transfers from the Carve-Out Reserve (a/k/a the Professional Fee Escrow) to the Recipients, to terminate the Carve-Out Reserve after the final amounts are transferred out of it, and to discharge and release Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve. The Court finds that: (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); (iii) it may enter a final order consistent with Article III of the Constitution of the United States; (iv) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (v) notice of the Motion and the Hearing were proper and sufficient under the circumstances and no other or further notice is necessary; (vi) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and (vii) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the Hearing all of which are incorporated herein, the Court determines that good and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

ORDERED that:

1.     The Motion is **GRANTED**.

2.     The Court retroactively approves the Chapter 7 Trustee Transfer made by the Debtors to the Chapter 7 Trustee.

---

[2] Any capitalized term not explicitly defined in this Order shall have the meaning ascribed to it in the Motion.

13046521-7

3.      The Debtors are authorized to make the other Transfers described in the Motion to the Recipients from the Carve-Out Reserve.

4.      After the remaining funds are transferred out of the Carve-Out Reserve pursuant to the terms of this Order and any other order of the Court, and without the need for a further order of the Court, (i) the Carve-Out Reserve is terminated, and (ii) Berger Singerman LLP, in its capacity as the administrator of the Carve-Out Reserve, has fully discharged its duties and obligations, and is fully released and discharged, as the administrator of the Carve-Out Reserve. This provision will become immediately effective on the date Berger Singerman LLP files a notice with the Court stating that it has distributed all funds from the Carve-Out Reserve pursuant to the terms of this Order and any other order of the Court and no funds remain in the Carve-Out Reserve.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

### #

Submitted by:
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN LLP
Co-Counsel for the former Chapter 11 Debtors
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
Email:  cjarvinen@bergersingerman.com

(*Attorney Jarvinen is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service*.)

3

13046521-7