**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.fisb.uscourts.gov

In re:

AEROTECH MIAMI INC.                          Chapter 7 Cases
d/b/a iAero Tech, et al.1[1],
                                             Case No. 23-17503-RAM

Debtors.                                     (Jointly-Administered)

_____/

**AWL LEASING II, LLC, AND ITS AFFILIATES INCLUDING OWL CREEK ASSET MANAGEMENT L.P. AND ITS AFFILIATED FUNDS AND SUBSIDIARIES: (1) APPLICATION FOR ALLOWANCE AND PAYMENT OF OBLIGATIONS AND ADMINISTRATIVE EXPENSE CLAIMS; (2) MOTION FOR RELIEF FROM THE AUTOMATIC STAY AUTHORIZING CREDITORS' APPLICATION OF THE SECURITY DEPOSIT TO OUTSTAND PRE-PETITION AND POST-PETITION OBLIGATIONS OWED BY THE DEBTORS TO AWL LEASING II, LLC AND (3) AMENDMENT OF AMENDED PROOF OF CLAIM**

AWL Leasing II, LLC, Owl Creek Asset Management, L.P., and its affiliated funds and

subsidiaries (collectively "**Creditors**" or "**AWL**"), by and through undersigned counsel, hereby

file this application and motion, (collectively the "**Motion**") (A) requesting an Order pursuant to

11 U.S.C. §§ 503(b); 362(d)(1); (d)(2)(A); allowing AWL's  Chapter 7 administrative expense

---

[1] The address of the Debtors is Scott N. Brown, Esq., chapter 7 trustee (the "**Chapter 7 Trustee**"), c/o Bast Amron LLP, One Southeast Third Ave., Ste. 2410, Miami, FL 33131. The last four digits of the Debtors' federal tax identification numbers are: (i) AeroTech Miami Inc. d/b/a iAero Tech (2242); (ii) AeroThrust Delta PBH, LLC (6675); (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC (4451); (iv) AeroThrust Holdings Leasing, LLC (0152); (v) iAero 11 Investments LLC (9894); (vi) iAero 11B Investments LLC (6126); (vii) iAero Group Bidco Inc. (3777); (viii) iAero Group Holdco 6 LLC (6980); (ix) iAero Group Intermediate Inc. (4712); (x) iAero Group Parent LLC (0962); (xi) iAero Thrust Engine Test Center, LLC (3908); (xii) iAero Thrust LLC (8261); (xiii) JAM Aerospace Parts, LLC (2331); (xiv) New Swift Air Holdings, L.L.C. (7373); (xv) Swift Air, L.L.C. d/b/a iAero Airways (2506); and (xvi) Swift Air Travel, LLC (3558). (collectively, the "**Debtors**").

136417934.21

claims in the approximate amount of  $ 1,642,679.87**; a Chapter 11** administrative expense claim in the approximate amount of $423,662.79; a Chapter 11 unsecured claim in the approximate amount of $103,640.43, and directing the Chapter 7 Trustee to pay AWL's chapter 7 administrative expense claims to the extent there are funds available;  (B) requesting relief from the automatic stay to offset, recoup, and/or back charge the prepetition security deposits held by AWL in the amount of $650,000**,** against claimed amounts owed by the Debtor to AWL, in AWL's sole discretion, and (C) amending the Amended Proof of Claim No. 337-1 filed on July 10, 2024.  In support of the Motion, AWL respectfully represents as follows:

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.  Commencement of Bankruptcy Proceedings

1. On September 19, 2023 (the "**Petition Date**"), the Debtors filed their voluntary petitions (the "**Chapter 11 Case**") for relief under chapter 11 of Title 11 of the United States Code 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") in the

2

United States Bankruptcy Court for the Southern District of Florida (Miami Division) (the "**Bankruptcy Court**").

2. From the Petition Date through May 1, 2024 (the "**Conversion Date**"), the Debtors operated as debtors-in-possession. On the Conversion Date, the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code.

**B.  Four Engine Leases**

3. Prior to the Petition Date, AWL and Debtor entered into four separate engine lease agreements described below (collectively, the "**Engine Leases**"). Prior to and after the Petition Date, the, Debtor continued to lease the engines described below.

**C.  Engine 720455**

4. AWL, as lessor, and Debtor, as lessee, entered into an Engine Lease Agreement dated as of December 21, 2020, as amended by Amendment No. 1 dated as of July 8, 2021, and as supplemented by Lease Supplement dated as of July 23, 2021 (collectively, the "**Engine 720455 Lease**"), pursuant to which AWL leased to Debtor one CFM International Model CFM56-3B2 aircraft engine bearing manufacturer's serial number 720455  ("**Engine 720455**").

136417934.21

5.    Engine 720455 was delivered to the Debtor on July 23, 2021.

6.    The monthly basic rent payable by Debtor to AWL under the Engine 720455 Lease is $210 for each flight hour and $90 for each flight cycle.[2]

7.    Pursuant to Section 4 of the Engine 720455 Lease, Debtor paid to AWL a deposit in the amount of $150,000 (the "**Engine 720455 Deposit**").  Section 4 of the of the Engine 720455 Lease provides that:

"*If an Event of Default has occurred and is continuing hereunder, in addition to all other rights that Lessor has under this Lease or applicable Law, Lessor may set-off against, use, apply or retain all or any part of the Security Deposit in full or partial payment of amounts due and payable by Lessee or any Affiliate of Lessee , as applicable,  under any Operative Document or Related Lease and to compensate Lender for any loss suffered as a consequence of, the occurrence of such Event of Default, or to apply toward losses or expenses Lessor may suffer or incur as a result of the occurrence of an Event of Default.*"

8.    The Engine 720455 Lease is what is known in the aircraft engine leasing business as a "**green time lease**."  The return date or scheduled termination date for a green time lease is the date when the applicable engine requires maintenance or an overhaul due to time limits or performance limits for such engine.  Specifically, the

---

[2] The basic rent is adjusted if the flight hour to flight cycle ratio is not 2:1.  The adjustments to the basic rent are set forth in Appendix 2B of the Engine 720455 Lease

4

136417934.21

scheduled termination date for Engine 720455 under the Engine 720455 Lease was the

date when Engine 720455

"*is removed from a Related Aircraft due to: (i) a loss of EGT margin or (ii) necessitated by the expiration of an engine life limited part*."

9.    Pursuant to Section 22 of the Engine 720455 Lease, in connection with the

return of Engine 720455 from Debtor to AWL, Debtor was required to return Engine

720455 in a "*serviceable condition in accordance with FAA guidelines including an*

*FAA Form 8130 Airworthiness Approval Tag and engine preservation tag*."    (the

"**Engine 720455 Return Condition**").

10. In addition,  Section 22 of the Engine 720455 Lease provides that:

"*If Lessee shall, for any reason whatsoever, fail to return the Engine in a timely manner in the condition specified in this Lease, the Obligations of Lessee shall continue and the Lease Term shall be deemed to be extended, day-to-day, until Return of the Engine; provided, that Lessee may not, during such extension period use the Engine for any flight operations and this Section 22.3 will not be construed as permitting or authorizing Lessee to fail to meet, or consenting to or waiving any failure by Lessee to perform, the Obligation to return the Engine in accordance with the requirements of this Lease or limiting Lessor's rights under any Operative Document.*"

11. Section 22 of the Engine 720455 Lease further provides that:

"*If the Engine is not returned to Lessor in accordance with this Lease on the Scheduled Termination Date, then Lessee shall be obligated to pay an amount (the "**Holdover Compensation**") equal to the sum calculated by addition of the following amounts: (i) 200% of the Basic Rent prorated on a daily basis for each day during the period from the*

5

*Scheduled Termination Date or, if applicable, the Termination Date if such date is prior to the Scheduled Termination Date) through and including the date the Engine is returned to Lessor in the condition specified herein (the "**Holdover Period**"), plus (ii) Maintenance Reserves accrued during each day of the Holdover Period, with Maintenance Reserves paid on a monthly basis, prorated on a daily basis payable for each day of the Holdover Period, plus (iii) any and all costs incurred by Lessor to cause the Engine to comply with the return condition requirements of this Lease, plus (iv) reasonable legal fees and expenses incurred by Lessor as a result of such breach by Lessee and any legal fees and expenses incurred as a result Lessor's enforcement of this Section 22.3".*

12. In July 2023, AWL hired Titan Services to transport Engine 72055 to FJ Turbine Power Inc. located in Pittsburg, PA ("**FJT**") for testing.  The cost of the transportation was $2,200  and the cost of the inspections was $22,375.

13. Additional inspections were completed by FTJ in January, 2023 and Jet Engine Technology Corporation in February 2023 and the costs of those inspections were $55,706 and $25,000 respectively.

14. Pursuant to (i) the Debtors' Motion of Debtors for Entry of Interim and Final Orders Pursuant to Section 365 (d) (4) of the Bankruptcy Code Extending the Deadline To Assume or Reject unexpired Leases of Non-Residential Real Property (the "**Motion to Extend Deadlines**") [ECF No. 418] and (ii) the Final Order on the Motion to Extend Deadlines (Doc. 445) issued on  January 1, 2024 by the Bankruptcy Court (the "**Final Order**"), Debtor rejected the Engine 720455 Lease on or about April 16, 2024.

6

15. In anticipation of the rejection by the Debtor of the Engine 720455 Lease, on or about March 23, 2024, Debtor relinquished physical possession of Engine 720455 to AWL at the maintenance facility of FJT. Although AWL accepted physical redelivery of the Engine 720455 at that time, Debtor did not return Engine 720455 with an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag in compliance with the Engine 720455 Return Condition. This failure to return the Engine in the Engine 720455 Return Condition was a breach of the Engine 720455 Lease.

16. On or about April 24, 2024, AWL subsequently transported Engine 720455 from FJT to the facility of Jet Engine Technology Corporation located in Doral, FL (the "**Engine 720455 Maintenance Facility**") for testing. The cost of such transportation was $3,000.

17. On or about May 1, 2024, a borescope inspection of Engine 720455 was conducted to determine if Engine 720455 satisfied the Engine 720455 Return Condition. The cost of such inspection was $4,450. In addition, Vulcan Aviation Services LLC was retained for trouble shooting purposes and the cost of such trouble shooting was $16,400.77

7

136417934.21

18. In September 2024,  Jet Engine Technology Corporation completed repairs on Engine 720455.  The cost of the repairs equaled $299,250.

19. The invoices for the costs relating to Engine  720455 are attached hereto as Exhibit A  (ESN 720455).

### D.  Engine 721681

20. AWL, as lessor, and Debtor, as lessee, entered into an Engine Lease Agreement dated as of April 5, 2022, as supplemented by Lease Supplement dated as of April 12, 2022 (collectively, the "**Engine 721681 Lease**"), pursuant to which AWL leased to Debtor one CFM International Model CFM56-3B2 aircraft engine bearing manufacturer's serial number 721681  ("**Engine 721681**").

21. Engine 721681 was delivered to the Debtor on April 12, 2022.

22. The monthly basic rent payable by Debtor to AWL under the Engine 721681 Lease is $185 for each flight hour and $85 for each flight cycle based on a flight hour to cycle ratio of 2:1.[3]

---

[3] The basic rent is adjusted if the flight hour to flight cycle ratio is not 2:1.  The adjustments to the basic rent are set forth in Appendix 2B of the Engine 721681 Lease.

136417934.21

23. Pursuant to Section 4 of the Engine 721681 Lease, Debtor paid to AWL a deposit in the amount of $175,000 (the "**Engine 721681 Deposit**").   Section 4 of the of the Engine 721681 Lease provides that:

"*If an Event of Default has occurred and is continuing hereunder, in addition to all other rights that Lessor has under this Lease or applicable Law, Lessor may set-off against, use, apply or retain all or any part of the Security Deposit in full or partial payment of amounts due and payable by Lessee or any Affiliate of Lessee , as applicable,  under any Operative Document or Related Lease and to compensate Lender for any loss suffered as a consequence of, the occurrence of such Event of Default, or to apply toward losses or expenses Lessor may suffer or incur as a result of the occurrence of an Event of Default.*"

24. The Engine 721681 Lease is "green time lease."[4]  The return date or scheduled termination date for a green time lease is the date when the applicable engine requires maintenance or an overhaul due to time limits or performance limits for such engine.   Specifically, the scheduled termination date for Engine 721681 under the Engine 721681 Lease was the date when Engine 721681 "*is removed from a Related Aircraft due to:  (i) a loss of EGT margin or (ii) necessitated by the expiration of an engine life limited part.*"

25. Pursuant to Section 22 of the Engine 721681 Lease, in connection with the return  of Engine 721681 from Debtor to AWL, Debtor was required to return Engine

---

[4] See Page 4, ¶ 8.

9

136417934.21

721681 in a "*serviceable condition in accordance with FAA guidelines including an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag*" (the "**Engine 721681 Return Condition").**

26. In addition, Section 22 of the Engine 721681 Lease provides that:

"*If Lessee shall, for any reason whatsoever, fail to return the Engine in a timely manner in the condition specified in this Lease, the Obligations of Lessee shall continue and the Lease Term shall be deemed to be extended, day-to-day, until Return of the Engine; provided, that Lessee may not, during such extension period use the Engine for any flight operations and this Section 22.3 will not be construed as permitting or authorizing Lessee to fail to meet, or consenting to or waiving any failure by Lessee to perform, the Obligation to return the Engine in accordance with the requirements of this Lease or limiting Lessor's rights under any Operative Document.*" The term "Return" means "*the return of the Engine . . . to Lessor pursuant to and in accordance with Article 22 and the other provisions of this Lease.*"

27. Section 22 f of the Engine 721681 Lease further provides that:

"*If the Engine is not returned to Lessor in accordance with this Lease on the Scheduled Termination Date, then Lessee shall be obligated to pay an amount (the "**Holdover Compensation**") equal to the sum calculated by addition of the following amounts: (i) 200% of the Basic Rent prorated on a daily basis for each day during the period from the Scheduled Termination Date (or, if applicable, the Termination Date if such date is prior to the Scheduled Termination Date) through and including the date the Engine is returned to Lessor in the condition specified herein (the "Holdover Period"), plus (ii) Maintenance Reserves accrued during each day of the Holdover Period, with Maintenance Reserves paid on a monthly basis, prorated on a daily basis payable for each day of the Holdover Period, plus (iii) any and all costs incurred by Lessor to cause the Engine to comply with the return condition requirements of this Lease, plus (iv) reasonable legal fees and expenses incurred by Lessor as a result of such breach by Lessee and any legal fees and expenses incurred as a result Lessor's enforcement of this Section 22.3*".

28. Pursuant to the Motion to Extend Deadlines and the Final Order, Debtor rejected the Engine 721681 Lease on or about April 16, 2024.

10

29. In anticipation of the rejection by the Debtor of the Engine 721681 Lease, on or about March 18, 2024, Debtor relinquished physical possession of Engine 721681 to AWL at the Debtor's facility in Greensboro, NC. Although AWL accepted physical re-delivery of Engine 721681, Debtor did not return Engine 721681 with an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag in compliance with the Engine 721681 Return Condition. This failure to satisfy the Engine 721681 Return Condition was a breach of the Engine 721681 Lease.

30. In addition, in connection with the return of Engine 721681, Debtor was required to provide an engine stand for the transportation of Engine 721681. Debtor failed to provide an engine stand and AWL hired SEKO Logistics to transport an engine stand to Greensboro, NC in order to be able to transport Engine 721681 to the Engine 721681 Maintenance Facility (defined below). The cost of such transportation of the engine stand was $3,350.

31. AWL hired MD Turbines to transport Engine 721681 from Greensboro, NC to the Engine 721681 Maintenance Facility (defined below). The cost of such transportation was $3,000.

136417934.21

32. On or about March 21, 2024, AWL delivered Engine 721681 to the facility of Jet Engine Technology Corporation in Doral, FL (the "**Engine 721681 Maintenance Facility**") for testing.

33.  On or about April 10, 2024, a borescope inspection of Engine 721681 was conducted to determine what maintenance or repairs were necessary to put Engine 721681 in a condition to satisfy the Engine 721681 Return  Condition.

34. The results of the borescope inspection conducted by the Engine 721681 Maintenance Facility indicated that Engine 721681 suffered foreign object damage which would require testing and repairs in order to satisfy the Engine 721681 Return Condition.  Such testing was conducted and such repairs were completed at various times after May 1, 2024, by the Engine 721681 Maintenance Facility and Vulcan Aviation.  The cost of such testing and repairs was $158,000.

35. The invoices for the costs with respect to Engine 721681 are attached hereto as Exhibit B  (ESN 721681).

E.   **Engine 858192**

12

136417934.21

36. AWL, as lessor, and Debtor, as lessee, entered into an Engine Lease Agreement dated as of September 22, 2024, as supplemented by Lease Supplement dated as of October 18, 2024 (collectively, the "**Engine 858192 Lease**") pursuant to which AWL leased to Debtor one CFM International Model CFM56-3B2 aircraft engine bearing manufacturer's serial number 858192 ("**Engine 858192**").

37. Engine 858192 was delivered to the Debtor on October 18, 2022.

38. The monthly basic rent payable by Debtor to AWL under the Engine 858192 Lease is $10,000.  In addition, a monthly utilization fee is $135 per flight hour and $75 for each flight cycle based on a 2:1 flight hour to flight cycle ratio.[5]

39. Pursuant to Section 4 of the Engine 858192 Lease, Debtor paid to AWL a deposit in the amount of $175,000 (the "**Engine 858192 Deposit**").   Section 4 of the of the Engine 858192 Lease provides that:

"*If an Event of Default has occurred and is continuing hereunder, in addition to all other rights that Lessor has under this Lease or applicable Law, Lessor may set-off against, use, apply or retain all or any part of the Security Deposit in full or partial payment of amounts due and payable by Lessee or any Affiliate of Lessee , as applicable,  under any Operative Document or Related Lease and to compensate Lender for any loss suffered as a consequence of, the occurrence of such Event of Default, or to apply toward losses or expenses Lessor may suffer or incur as a result of the occurrence of an Event of Default.*"

40. The Engine 858192 Lease is what is known as a "green time lease." See Page 4, ¶ 8.  The return date for a green time lease is the date when the applicable

---

[5] The utilization fee is adjusted if the flight hour to flight cycle ratio is not 2:1.  The adjustments to the utilization fee are set forth in Appendix 2B of the Engine 858192 Lease.

13

engine requires maintenance or an overhaul due to time limits or performance limits for such engine.  Specifically, the scheduled redelivery date for Engine 858192 under the Engine 858192 Lease was the date when Engine 858192 "*is removed from a Related Aircraft due to:  (i) a loss of EGT margin or (ii) necessitated by the expiration of an engine life limited part*."

41. Pursuant to Section 22 of the Engine 858192 Lease, in connection with the return of Engine 858192 from Debtor to AWL, Debtor was required to return Engine 858192 in a "*serviceable condition in accordance with FAA guidelines including an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag*." (the "**Engine 858192 Return Condition").**

42. In addition,  Section 22 of the Engine 858192 Lease provides that:

" *If Lessee shall, for any reason whatsoever, fail to return the Engine in a timely manner in the condition specified in this Lease, the Obligations of Lessee shall continue and the Lease Term shall be deemed to be extended, day-to-day, until Return of the Engine; provided, that Lessee may not, during such extension period use the Engine for any flight operations and this Section 22.3 will not be construed as permitting or authorizing Lessee to fail to meet, or consenting to or waiving any failure by Lessee to perform, the Obligation to return the Engine in accordance with the requirements of this Lease or limiting Lessor's rights under any Operative Document*."   The term "Return" means "*the return of the Engine . . .  to Lessor pursuant to and in accordance with Article 22 and the other provisions of this Lease*."

43. Section 22 of the Engine 858192 Lease further provides that:

14

"*If the Engine is not returned to Lessor in accordance with this Lease on the Scheduled Termination Date, then Lessee shall be obligated to pay an amount (the "**Holdover Compensation**") equal to the sum calculated by addition of the following amounts: (i) 200% of the Basic Rent prorated on a daily basis for each day during the period from the Scheduled Termination Date (or, if applicable, the Termination Date if such date is prior to the Scheduled Termination Date) through and including the date the Engine is returned to Lessor in the condition specified herein (the "**Holdover Period**"), plus (ii) Maintenance Reserves accrued during each day of the Holdover Period, with Maintenance Reserves paid on a monthly basis, prorated on a daily basis payable for each day of the Holdover Period, plus (iii) any and all costs incurred by Lessor to cause the Engine to comply with the return condition requirements of this Lease, plus (iv) reasonable legal fees and expenses incurred by Lessor as a result of such breach by Lessee and any legal fees and expenses incurred as a result Lessor's enforcement of this Section 22.3*".*

44. Pursuant to Pursuant to the Motion to Extend Deadlines and the Final Order, the final date for Debtor to reject the Engine 858192 Lease was on or about April 16, 2024.

45. In anticipation of the rejection by the Debtor of the Engine 858192 Lease, on or about February 23, 2024, a borescope inspection of Engine 858192 was completed by Service Aero Solutions with support from Ascent Aviation. The cost of such borescope inspection was $6,294.78.

46. In order to complete the borescope and temporarily hold Engine 858192 off wing, an engine stand was required and Debtor failed to provide such engine stand. Because of the Debtor's failure to provide an engine stand, AWL leased an engine stand

15

for a period of 60 days from Next Gen Aero Support.  The cost of such lease was $9,000.

47. On or about March 26, 2024, Debtor relinquished physical possession of Engine 858192 to AWL at Ascent Aviation in Marana, AZ.  Although AWL accepted physical re-delivery of Engine 858192, Debtor did not return Engine 858192 with an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag in compliance with the Engine 858192 Return Condition.  This failure to satisfy the Engine 858192 Return Condition was a breach of the Engine 858192 Lease.

48. AWL hired MD Turbines to transport Engine 858192. On or about March 26, 2024,  AWL delivered Engine 858192 to Jet Engine Technology Corporation in Doral, FL (the "**Engine 858192 Maintenance Facility**").   The cost of such transportation was $5,500.

49. On or about April 1, 2024,  a maximum power assurance run and a borescope inspection of Engine 858192 were conducted to determine if Engine 858192 satisfied the Engine 858192 Return Condition.

16

136417934.21

50. The results of the inspections conducted by the Engine 858192 Maintenance Facility indicated that Engine 858192 did not satisfy the Engine 858192 Return Condition and that repairs were required to satisfy Engine 858192 Return Conditions. The repairs were completed on or about May 10, 2024.   The cost of the inspections and repairs were $98,500.  In addition, AWL hired MD Turbines to transport the leased engine stand back to Next Gen Aero Support and the cost of such transportation was $3,000.

51. The invoices for the costs with respect to Engine 858192 are attached hereto as Exhibit C  (ESN 858192).

**F.  Engine 727144**

52. AWL, as lessor, and Debtor, as lessee, entered into an Engine Lease Agreement dated as of December 21, 2020, as supplemented by Lease Supplement dated as of January 13, 2021, as amended by Amendment No.  1 to Engine Lease Agreement dated as of July 8, 2021, as assigned and assumed by the Assignment, Assumption and Amendment Agreement (ESN 727144) dated as of April 14, 2022 and as further amended by Amendment No. 2 To  Engine  Lease  Agreement dated as of

17

January 31, 2024 (collectively, the "**Engine 727144 Lease**") pursuant to which AWL leased to Debtor one CFM International Model CFM56-3B2 aircraft engine bearing manufacturer's serial number 727144  ("**Engine 727144**").

53. Engine 727144 was delivered to the Debtor on January 13, 2021.

54. The monthly basic rent payable by Debtor to AWL under the Engine 727144 Lease is $175 for each flight hour and $85 for each flight cycle based on a flight hour to cycle ratio of 2:1.[6]

55. Pursuant to Section 4 of the Engine 727144 Lease, Debtor paid to AWL a deposit in the amount of $150,000 (the "**Engine 727144 Deposit**").   Section 4 of the of the Engine 727144 Lease provides that:

"*If an Event of Default has occurred and is continuing hereunder, in addition to all other rights that Lessor has under this Lease or applicable Law, Lessor may set-off against, use, apply or retain all or any part of the Security Deposit in full or partial payment of amounts due and payable by Lessee or any Affiliate of Lessee , as applicable,  under any Operative Document or Related Lease and to compensate Lender for any loss suffered as a consequence of, the occurrence of such Event of Default, or to apply toward losses or expenses Lessor may suffer or incur as a result of the occurrence of an Event of Default.*"   The term "*Related Lease*"  means  "*any and all leases of aircraft between Lessor and or any Affiliate of Lessor, or trustee on behalf of Lessor or any Affiliate of Lessor, as lessor, and Lessee or any Affiliate of Lessee, as lessee, whether such leases may be construed to be "true" leases or otherwise.*"*

---

[6] The basic rent is adjusted if the flight hour to flight cycle ratio is not 2:1.  The adjustments to the basic rent are set forth in Amendment No. 1 to Engine Lease Agreement dated July 8, 2021.

136417934.21

56. Pursuant to Amendment No. 2 To Engine Lease Agreement dated as of January 11, 2024, between AWL and Debtor, the scheduled return date for Engine 727144 was extended to March 31, 2024 with an automatic 15-day extension.

57. Pursuant to Section 22 of the Engine 727144 Lease, in connection with the return of Engine 727144 from Debtor to AWL, Debtor was required to return Engine 727144 in a "*serviceable condition in accordance with FAA guidelines including an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag.*" (the "**Engine 727144 Return Condition").**

58. In addition, Section 22 of the Engine 727144 Lease provides that:

" *If Lessee shall, for any reason whatsoever, fail to return the Engine in a timely manner in the condition specified in this Lease, the Obligations of Lessee shall continue and the Lease Term shall be deemed to be extended, day-to-day, until Return of the Engine; provided, that Lessee may not, during such extension period use the Engine for any flight operations and this Section 22.3 will not be construed as permitting or authorizing Lessee to fail to meet, or consenting to or waiving any failure by Lessee to perform, the Obligation to return the Engine in accordance with the requirements of this Lease or limiting Lessor's rights under any Operative Document.*" The term "Return" means "*the return of the Engine . . . to Lessor pursuant to and in accordance with Article 22 and the other provisions of this Lease.*"

59. Section 22 of the Engine 727144 Lease further provides that:

"*If the Engine is not returned to Lessor in accordance with this Lease on the Scheduled Termination Date, then Lessee shall be obligated to pay an amount (the "Holdover Compensation") equal to the sum calculated by addition of the following amounts: (i) 200% of the Basic Rent prorated on a daily basis for each day during the period from the Scheduled Termination Date (or, if applicable, the Termination Date if such date is prior*

19

136417934.21

*to the Scheduled Termination Date) through and including the date the Engine is returned to Lessor in the condition specified herein (the "Holdover Period"), plus (ii) Maintenance Reserves accrued during each day of the Holdover Period, with Maintenance Reserves paid on a monthly basis, prorated on a daily basis payable for each day of the Holdover Period, plus (iii) any and all costs incurred by Lessor to cause the Engine to comply with the return condition requirements of this Lease, plus (iv) reasonable legal fees and expenses incurred by Lessor as a result of such breach by Lessee and any legal fees and expenses incurred as a result Lessor's enforcement of this Section 22.3".*

60. On or about April 15, 2024, Debtor returned physical possession of Engine 727144 to AWL at the facility of the Debtor located in Alexandria, Louisiana but Debtor did not return Engine 727144 with an FAA Form 8130 Airworthiness Approval Tag and engine preservation tag in compliance with the Engine 727144 Return Condition.

61. AWL hired MD Turbines to transport Engine 727144 to Jet Engine Technology Corporation in Doral, FL (the "**Engine 727144 Maintenance Facility**"). The cost of such transportation was $3,800.   On or about April 23, 2024,  AWL delivered Engine 727144 to the Engine 727144 Maintenance Facility.

62. On or about May 10, 2024,  a borescope inspection of Engine 727144 was conducted by the Engine 727144 Maintenance Facility to determine if Engine 727144 satisfied the Engine 727144 Return Condition.   The cost of the inspection was $4,450.

20

136417934.21

63. The results of the borescope inspection for Engine 727144 revealed (i) that Engine 727144 experienced an "overtemp" condition in which Engine 727144 was operated at a  temperature in excess of the temperature allowed under the applicable maintenance manual and (ii) that Engine 727144 sustained significant damage.

64. On or about June 10, 2024,  AWL requested a maintenance repair proposal from the Engine 727144 Maintenance Facility for the repair of Engine 727144.   The estimated cost of the repair of Engine 727144 is $1,074,600.

65. The invoices for the costs and estimate with respect to Engine 727144 are attached hereto as Exhibit D  (ESN 727144).

**G.  Failure to Pay Basic Rent and Utilization Fees**

66. With respect to Engine 720455, Engine 721681, Engines 858192 and Engine 7271441 (collectively, the "**Engines**"),  Debtors have failed to pay pre-petition basic rent and utilization fees and post-petition basic rent and utilization fees due under the Engine 720455 Lease, the Engine 721681 Lease, the Engine 858192 Lease and the

21

136417934.21

Engine 727144 Lease (collectively, the "**Leases**")  in the amounts set forth on **Exhibit E** attached hereto.

**H.  Repair and Maintenance Costs to place the Engines in the Return Conditions**

67. Debtors have not paid to AWL (i) the amounts that were spent by AWL to place the Engines in the Return Conditions  and (ii) in the case of Engine 727144, the estimated cost of   the repair to place Engine 727144 in the Engine 727144 Return Condition.   These amounts are specified in in this Motion and in the invoices attached in **Exhibit A through Exhibit D**  attached hereto.  The Debtor's failure to place the Engines in the applicable Return Conditions constitutes a breach of the Debtor's obligations under the Leases.  In addition, the Debtor's use of the Engines prior to the rejection or return thereof to AWL provided a benefit to the Estate.  The  transportation costs, inspection costs and repair costs incurred by AWL (including the estimated repair costs for Engine 727144) on or after the Conversion Date are entitled to a Chapter 7 Administrative Priority Claim.

**I.  Legal Fees**

136417934.21

68. Pursuant to Section 22 of the each of the Leases, Debtors are required to pay for AWL's reasonable attorneys' fees and expenses.   The amount of legal fees and expenses  are specified in **Exhibit F.**

## J.  Security Deposit

69. Each of the Leases provides that the Security Deposit can be set off against, used, retained by AWL or applied for the full or partial payment of amounts due to AWL or any affiliate of AWL under the applicable Lease or under any related lease.

## K.    Summary

70. AWL is owed: (a) not less than $103,640.26 for pre-petition Chapter 11 basic rent,  utilization fees, repair and maintenance costs; (b): not less than $423,662.79 for post-petition Chapter 11 basic rent, utilization fees and repair and maintenance costs and legal fees; and (c): not less than $1,642,679.87 for post-conversion Chapter 7 basic rent, repair and maintenance costs and legal fees.

71. AWL has incurred legal fees and expenses (i) in the amount of $95,503.30 for the period prior to the Conversion Date and (i) in the amount of $61,029.10 for the period after the Conversion Date.

23

136417934.21

72. On the Conversion Date, this Court entered its Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code (ECF No. 625), and Scott N. Brown was appointed as chapter 7 trustee of the Debtors' bankruptcy estates [ECF No. 626].

73. On May 16, 2024, the Debtors filed their *Amended Notice of Filing of Schedule of Post-Petition Debts* [ECF No. 662] (the "**Amended Notice**"). In the Amended Notice, the Debtors listed AWL as having an outstanding post-petition balance of $38,260.20. See ECF 662 at page 4 of 16.

74. Section 503(b)(1)(A) provides for the allowance of administrative expenses, including the actual, necessary costs and expenses of preserving the bankruptcy estate.

### RELIEF REQUESTED

WHEREFORE, AWL respectfully requests the Court enter an Order granting to AWL:

a.   Relief from the Automatic Stay to allow AWL to offset, apply, retain, recoup, and/or back charge the Security Deposits held by AWL, as AWL deems appropriate in its sole discretion.

b.   a prepetition unsecured claim in an amount not less than $103,640.26 ;

24

136417934.21

c.  a chapter 11 administrative  expense claim in an amount not less than  $423,662.79;

d.  a chapter 7 administrative expense claim in an amount  not less than $1,642,679.87; and

e.  such other and further relief as the Court may deem just and proper.

Dated: October 18, 2024                    Respectfully submitted,

*/s/ John J. Lamoureux*
John J. Lamoureux
Florida Bar No. 835218
Carlton Fields, P.A.
P. O. Box 3239
Phone:  813-223-7000
Fax:  813-229-4133
Email:  jlamoureux@carltonfields.com
         Attorneys for Creditors, AWL Asset
Management, L.P. and AWL II, LLC


And


*/s/ David Kulowiec*
David Kulowiec
Kulowiec Jorquera & Whalen LLP
Phone:  914 234-4720
Fax:  914 234-7210
Email:  dkulowiec@kullaw.com
         Attorneys for Creditors, AWL Asset
Management, L.P. and AWL II, LLC

136417934.21

## CERTIFICATE OF SERVICE

I, John J. Lamoureux, hereby certify that I have this 18th day of October, 2024 filed the foregoing document with the Clerk of the United States Bankruptcy Court, Southern District of Florida who will serve the document via the Court's CM/ECF System, which will cause all parties and counsel requesting notice to be served a copy electronically.

*/s/ John J. Lamoureux*

136417934.21