**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                                                    Chapter 7 Cases (Converted)

**AEROTECH MIAMI INC. d/b/a iAero Tech,**          Case No. 23-17503-RAM
***et al.*,[1]**                                                        (Jointly Administered)

_____Debtors._____/

**TRUSTEE, SCOTT N. BROWN'S MOTION (A) TO APPROVE AGREEMENT**
**TO COMPROMISE CONTROVERSY AND MUTUAL GENERAL RELEASE**
**BETWEEN TRUSTEE AND PAN AM FLIGHT ACADEMY, LLC,**
**AND (B) FOR PAYMENT OF CONTINGENCY FEE**
**TO BAST AMRON LLP FROM SETTLEMENT FUNDS**

Scott N. Brown, as Chapter 7 trustee of the jointly administered bankruptcy estates (the "Estates") of (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC (the "Trustee"), through counsel and pursuant to Federal Rule of Bankruptcy Procedure 9019, files this Motion (A) to Approve Agreement to Compromise Controversy and

---

[1] The address of the Debtors is c/o Scott N. Brown, Chapter 7 trustee, 1 S.E. 3rd Avenue - #2410, Miami, FL 33131. The last four digits of the Debtors' federal tax identification numbers are: (i) AeroTech Miami Inc. d/b/a iAero Tech (2242; Case No. 23-17503); (ii) AeroThrust Delta PBH, LLC (6675; Case No. 23-17504); (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC (4451; Case No. 23-17505); (iv) AeroThrust Holdings Leasing, LLC (0152; Case No. 23-17506); (v) iAero 11 Investments LLC (9894; Case No. 23-17507); (vi) iAero 11B Investments LLC (6126; Case No. 23-17508); (vii) iAero Group Bidco Inc. (3777; Case No. 23-17509); (viii) iAero Group Holdco 6 LLC (6980; Case No. 23-17510);(ix) iAero Group Intermediate Inc. (4712; Case No. 23-17512); (x) iAero Group Parent LLC (0962; Case No. 2317513); (xi) iAero Thrust Engine Test Center, LLC (3908; Case No. 23-17514); (xii) iAero Thrust LLC (8261; Case No. 23-17515); (xiii) JAM Aerospace Parts, LLC (2331; Case No. 23-17516); (xiv) New Swift Air Holdings, L.L.C. (7373; Case No. 23-17517); (xv) Swift Air, L.L.C. d/b/a iAero Airways (2506; Case No. 23-17518); and (xvi) Swift Air Travel, LLC (3558; Case No. 23-17519).

Case No.: 23-17503-BKC-RAM
(Jointly Administered)

Mutual General Release Between Trustee and Pan Am Flight Academy, LLC, and (B) for Payment of Contingency Fee to Bast Amron LLP From Settlement Funds (the "Motion"), and in support thereof states as follows:

## I. Summary of Requested Relief

1.    By this Motion, the Trustee seeks entry of an order: (a) approving the settlement between the Trustee and Pan Am Flight Academy, LLC on the terms and conditions set forth in the Agreement to Compromise Controversy and Mutual General Release Between Trustee and Pan Am Flight Academy, LLC (the "Agreement")[2] attached hereto as **Exhibit "A"** and incorporated by reference; and (b) approving the payment of the 35% contingency fee to Trustee's special litigation counsel, Bast Amron LLP ("Bast Amron") from the settlement proceeds.

2.    Pursuant to the terms of the Agreement, Pan Am has agreed to pay the Estate $65,000.00 in cleared funds (the "Settlement Amount"), in full and final settlement of any and all claims the Estate may possess against Pan Am arising from or related to the instant Bankruptcy Case.

3.    As detailed below, the Trustee believes that the Settlement falls above the lowest point in the range of reasonableness and thus, meets the standards set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544 (11th Cir. 1990). Accordingly, the Trustee asserts that the Settlement is in the best interests of this Estate and urges the Court to approve same.

## II. Limited Relevant Background

4.    These cases commenced with the filing of voluntary skeleton Chapter 11 petitions by (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust

---

[2] The settlement subject of the Agreement shall be referred to as the "Settlement." All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Agreement. This Motion contains a summary of the key terms of the Settlement. The terms of the Agreement control and all parties are urged to review same.

2

Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC (collectively, the "Debtors") on September 19, 2023 (the "Petition Date").

5.      From the Petition Date through May 1, 2024 (the "Conversion Date"), the Debtors operated as debtors-in-possession. However, subsequent to the Petition Date, only Debtor Swift Air, L.L.C. ("Swift Air") was operational.

6.      On September 20, 2023, the Debtors filed their *Ex Parte Motion for Joint Administration* (ECF No. 5), and shortly thereafter, this Court entered its *Order Granting Debtors' Ex Parte Motion for Joint Administration* (ECF No. 14) (the "Joint Administration Order").

7.      On April 12, 2024, the Debtors filed their *Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* (ECF No. 601) (the "Conversion Motion").

8.      On April 14, 2024, this Court entered the Sale Order. Subsequently, on April 18, 2024, the Debtors filed their *Notice of Closing Date and Request to Enter Conversion Order on April 30, 2024* (ECF No. 603).

9.      On May 1, 2024, this Court entered its *Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* (ECF No. 625) (the "Conversion Order").

10.     Shortly thereafter, on May 1, 2024, Scott N. Brown was appointed as Chapter 7 trustee of the Debtors' bankruptcy estates (*see* ECF No. 626).

Case No.: 23-17503-BKC-RAM
(Jointly Administered)

**The Transfers, the Claims & the Demand**

11.    Consistent with his fiduciary duties and statutory obligations, after his appointment, the Trustee and his professionals began investigating potential recovery opportunities to be pursued for the Estate's benefit.

12.    Prior to the Petition Date, Pan Am had a business relationship with Swift Air pursuant to which it provided goods and/or services to Swift Air.

13.    Based upon, among other things: (a) a review of the Debtor's books, records and bank statements, and (b) an analysis prepared by the Estate's accountants KapilaMukamal, LLP, the Trustee determined that during the ninety (90) day period immediately preceding the Petition Date (the "Preference Period"), Debtor Swift Air made transfers to Pan Am in an amount not less than $330,660 (collectively, the "Preferential Transfers" or the "Transfers").

14.    The Trustee asserted that the Transfers were avoidable and recoverable under 11 U.S.C. §§ 547 & 550 because the Transfers (i) were made to or for the benefit of Pan Am, (ii) were made on account of antecedent debts, (iii) were made while Swift Air was insolvent, (iv) were made on or within ninety (90) days of the Petition Date, and (v) enabled Pan Am to receive more than it would receive if the case was a case under Chapter 7, and sent a demand letter to Pan Am (the "Demand Letter") asserting that the Swift Air Estate possessed avoidance claims against Pan Am arising under 11 U.S.C § 547, *et seq.* in the total amount of $330,660 (the "Pan Am Claims").

15.    Upon receipt of the Demand Letter, Pan Am's counsel contacted the Trustee, and requested additional time to investigate the Pan Am Claims.

16.    Thereafter, Pan Am proffered certain partial defenses, including that (a) certain of the Transfers were made in the ordinary course of business between Swift Air and Pan Am, and (b) after certain of the Transfers, it gave new value  to or for the benefit of Swift Air (i) not secured by an otherwise unavoidable security interest, and (ii) on account of which new value Swift Air did not

4

make an otherwise unavoidable transfer to or for the benefit of Pan Am, and the Settlement Parties began settlement discussions.

### III. The Settlement

17.     Thereafter, and in light of, among other things: (a) the expense and uncertainty of litigation; and (b) Pan Am's proffered defenses, and in order to provide for the expeditious administration of this Estate, the Settlement Parties engaged in settlement discussions, eventually reached a settled in principle, negotiated the terms of the settlement, and entered into the Agreement.

18.     Pursuant to the terms of the Agreement, Pan Am has agreed to pay to the Trustee, and the Trustee agrees to accept, the Settlement Amount in the sum of $65,000.00, in full and complete settlement of any and all claims that the Trustee has the right to assert against Pan Am arising from or related to the instant Bankruptcy Cases, including, but not limited to, the Transfers and the Pan Am Claims, payable no later than thirty (30) days after Pan Am's execution of the Agreement. In the unlikely event that the Settlement is not approved, the Trustee has agreed to promptly return to Pan Am any settlement payment received.

19.     The Agreement also contains, among other things: (a) a tolling of the Trustee's deadline to commence claims against Pan Am pending the Court's ruling on the Settlement; (b) representations and warranties; (c) venue and jurisdiction provisions; (d) a denial of liability provision; and (e) mutual releases between the Trustee and Pan Am (excluding the obligations under the Agreement).

### IV. Legal Standard for Settlement

20.     Before addressing the substantive issues, it is important to note that the Settlement arose from good-faith settlement discussions and negotiations between the Settlement Parties, and following the Trustee's professionals' review of the proffered defenses. The Settlement was

5

negotiated at arm's-length and approval is in accord with the strong public policy which favors settlement in all types of litigation.  *In re Grau,* 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).

21.     Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

22.     As this Court has previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion."  *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (Cristol, J.) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.),* 762 F.2d 185, 189 (2d Cir. 1985); *In re Prudence Co.,* 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom. *Stein v. McGrath*, 306 U.S. 636 (1939)).

23.     The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'"  *Arrow Air*, 85 Bankr. 891 (quoting *Teltronics Servs.*, 762 F.2d 189; *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983)).

24.     According to the United States Eleventh Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

(a)     the probability of success in the litigation;
(b)     the difficulties, if any, to be encountered in the matter of collection;
(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544 (11th Cir. 1990). *See Jackson Brewing*, 624 F.2d 602, quoted in *Arrow Air*, 85 B.R. 891.

6

25.    In the instant case, each of the four *Justice Oaks* factors weighs in favor of approval of the Settlement.

### A.    *Probability of Success in Litigation*

26.    The Trustee believes that approval of the Settlement is in the best interests of the Estate because, among other things, the Settlement eliminates the need for litigation.  And while the Trustee believes that it is more likely than not that he would ultimately prevail in litigation, given the inherent risks of litigation, the complexity and subjectivity of certain of Pan Am's proffered defenses, the Trustee's professionals' review of the proffered defenses, and the certainty to be provided under the Settlement, from the perspective of the Trustee, the Settlement falls well within the reasonable range of anticipated litigation outcomes.

### B.    *Difficulties, Associated With Collection*

27.    As with most pre-judgment settlements, the Trustee does not have financial information from Pan Am. Notwithstanding, Pan Am has not raised collection as an issue, difficulties associated with collection was not a motivating factor for the Trustee's entry into the Settlement, and the Trustee asserts that this prong of *Justice Oaks* is largely inapplicable, as he does not believe that there is any material collection risk as to Pan Am.

### C.    *Complexity, Expense, Inconvenience and Delay*

28.    As with all litigation, there is expense, inconvenience and delay that would undoubtedly arise. And while preference claims in general are not particularly complex, proving such claims will likely require the need for an expert, and the costs attendant to such litigation could be significant, with no assurance of a successful outcome.

7

**D.**       *Paramount Interest of Creditors*

29.      Finally, the Trustee asserts that the "paramount interest of creditors" prong of the *Justice Oaks* test is satisfied because the Settlement all but guarantees a meaningful recovery after considering the proffered defenses, and eliminates further professional fees and costs associated with investigation and litigation relative to the claim against Pan Am.

30.      Accordingly, for the reasons set forth herein, the Trustee asserts that the Settlement meets the standards set forth in *In re Justice Oaks II*, and therefore, recommends approval of the Settlement because it is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the best interest of the Estate and its creditors.

### V. Motion to Approve Payment of Contingency Fee to Bast Amron from Settlement Proceeds

31.      On September 16, 2024, this Court entered its *Order Granting Chapter 7 Trustee, Scott N. Brown's Motion to Employ Brett M. Amron, Esquire and Bast Amron LLP as Special Litigation Counsel to the Estate Effective as of August 20, 2024* (ECF No. 819)(the "Special Counsel Employment Order").

32.      The Special Counsel Employment Order provides, in pertinent part, as follows:

The Chapter 7 Trustee, Scott N. Brown, is authorized to employ Brett M. Amron, Esquire and Bast Amron LLP ("BA" or "Bast Amron"), a firm in which the Trustee is a partner, as special litigation counsel to the Estates, on the terms and condition set forth in the Motion.

Without limiting the generality of the foregoing, BA is authorized to investigate and prosecute any and all potential recovery opportunities on a pure contingency fee basis of 35% of all gross recoveries obtained by the Estate, regardless of source and regardless of whether or not litigation is commenced, plus an additional 5% for appellate work, if any, plus reimbursement of actual costs incurred, including, but not limited to, any fees, costs, and expenses associated with the retention of any expert witnesses and the use of any e-discovery/data management platforms. The entitlement to the additional fee for appellate work will accrue only if a notice of appeal is filed in connection with any particular litigation matter. BA shall not be entitled to a contingent fee for the reduction of claims asserted by any target of a potential litigation claim,

8

without prejudice to its right to seek reasonable fees and costs based on time spent and the results obtained objecting to the particular claim(s). BA shall also be entitled to seek compensation in its capacity as general counsel for legal services not directly related to the investigation and prosecution of Potential Claims, including legal services provided in connection with necessary case and claims administration and other matters.

33.     If the Settlement is approved by this Court, Bast Amron is entitled to receive $22,750.00 from the $65,000.00 settlement for its contingency fee.

34.     Accordingly, the Trustee seeks authority to disburse the sum of $22,750 to Bast Amron upon approval of the Settlement and receipt of the Settlement Amount, without further order.

## VI. Other Related Relief

### A. Notice

35.     The Trustee will serve this Motion and the Notice of Hearing, when issued, on those parties entitled to notice pursuant to this Court's *Second Amended Order Granting Trustee, Scott N. Brown's Second Ex Parte Motion for Entry of Order to Limit Notice and Establish Notice Procedures* (ECF No. 874)(the "Order Limiting Notice"), and the Trustee requests that this Court make a determination that the requisite notice has been provided to all parties entitled to notice.

### B. Authority to Execute Necessary Documents

36.     Assuming that the Settlement is approved, the Trustee seeks authority to: (a) take such actions; and (b) execute such documents, as he deems reasonable, necessary and/or desirable to effectuate the Settlement.

### C. Retention of Jurisdiction

37.     Finally, assuming that the Settlement is approved, the Trustee requests that the Court retain sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement and enforce (i) the terms and conditions of the Agreement and Settlement, the Motion and the Approval

Order, and (ii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Agreement and Settlement, this Motion and the Approval Order, and (ii) all related matters.

WHEREFORE, Scott N. Brown, as Chapter 7 trustee of the jointly administered bankruptcy estates of (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC, respectfully requests this Honorable Court enter an Order: (1) granting the instant Motion; (2) finding that the Settlement meets the factors set forth in *In re Justice Oaks II, Ltd.* and falls above the lowest point in the range of reasonableness; (3) approving the Settlement and the Agreement in its entirety; (4) approving the payment of the contingency fee to Bast Amron LLP in the amount of $22,750.00; (5) authorizing the Trustee to disburse the contingency fee in the amount of $22,750.00 to Bast Amron LLP upon receipt of the Settlement Amount and without further order of this Court; and (6) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,
Bast Amron LLP
*Special Litigation Counsel to the Trustee,*
*Scott N. Brown*
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: 305.379.7904
Email: sbrown@bastamron.com

By:/s/ *Scott N. Brown*
    Scott N. Brown, Esq. (FBN 663077)

4933-9914-0198, v. 1

Case No.: 23-17503-BKC-RAM
(Jointly Administered)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished this 4th

day of September, 2025, as follows:


Via CM/ECF to all parties registered to receive CM/ECF notice in this case; and

Via U.S. Mail to all parties that requested mail service pursuant to the terms of the Order Limiting Notice as listed on the attached following page.

/s/ Scott N. Brown
Scott N. Brown, Esq.

11

4933-9914-0198, v. 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Chapter 7 Cases

**AEROTECH MIAMI INC. d/b/a iAero Tech,**                 Case No. 23-17503-RAM
*et al.,*[1]                                              (Jointly Administered)


_____Debtors._____/

### AGREEMENT TO COMPROMISE CONTROVERSY
### AND MUTUAL GENERAL RELEASE BETWEEN TRUSTEE
### AND PAN AM FLIGHT ACADEMY, LLC

This Agreement to Compromise Controversy and Mutual General Release (the

p"Agreement") is entered into by and between (a) Scott N. Brown, solely in his capacity as Chapter

7 trustee (the "Trustee") of the jointly administered bankruptcy estates of (i) Aerotech Miami Inc.

d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine

Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero

11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero

Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC,

(xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C.,

(xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC (collectively, the

"Estates" or the "Bankruptcy Estates"), and (b) Pan Am Flight Academy, LLC, a Florida limited

liability company (formerly known as Pan Am Flight Academy Inc., a Florida corporation, doing

---

[1] The address of the Debtors is c/o Scott N. Brown, Chapter 7 trustee, 1 S.E. 3 rd Avenue - #2410, Miami, FL 33131. The last four digits of the Debtors' federal tax identification numbers are: (i) AeroTech Miami Inc. d/b/a iAero Tech (2242; Case No. 23-17503); (ii) AeroThrust Delta PBH, LLC (6675; Case No. 23-17504); (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC (4451; Case No. 23-17505); (iv) AeroThrust Holdings Leasing, LLC (0152; Case No. 23-17506); (v) iAero 11 Investments LLC (9894; Case No. 23-17507); (vi) iAero 11B Investments LLC (6126; Case No. 23-17508); (vii) iAero Group Bidco Inc. (3777; Case No. 23-17509); (viii) iAero Group Holdco 6 LLC (6980; Case No. 23- 17510);(ix) iAero Group Intermediate Inc. (4712; Case No. 23-17512); (x) iAero Group Parent LLC (0962; Case No. 2317513); (xi) iAero Thrust Engine Test Center, LLC (3908; Case No. 23-17514); (xii) iAero Thrust LLC (8261; Case No. 23-17515); (xiii) JAM Aerospace Parts, LLC (2331; Case No. 23-17516); (xiv) New Swift Air Holdings, L.L.C. (7373; Case No. 23-17517); (xv) Swift Air, L.L.C. d/b/a iAero Airways (2506; Case No. 23-17518); and (xvi) Swift Air Travel, LLC (3558; Case No. 23-17519).

business as Pan Am International Flight Academy) (collectively, "Pan Am," and collectively with the Trustee, the "Settlement Parties" or the "Parties").

## RECITALS

**WHEREAS,** the above-captioned cases (collectively, the "Bankruptcy Cases") commenced with the filing of voluntary skeleton Chapter 11 petitions by (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC (collectively, the "Debtors") on September 19, 2023 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court" or the "Bankruptcy Court");

**WHEREAS,** from the Petition Date through May 1, 2024 (the "Conversion Date"), the Debtors operated as debtors-in-possession. However, subsequent to the Petition Date, only Debtor Swift Air, L.L.C. ("Swift Air") was operational;

**WHEREAS,** on September 20, 2023, the Debtors filed their Ex Parte Motion for Joint Administration (ECF No. 5), and shortly thereafter, the Bankruptcy Court entered its Order Granting Debtors' Ex Parte Motion for Joint Administration (ECF No. 14) (the "Joint Administration Order");

**WHEREAS,** on April 12, 2024, the Debtors filed their Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code (ECF No. 601) (the "Conversion Motion");

2

WHEREAS, on April 14, 2024, this Court entered its Order (I) Approving Stalking Horse APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens Except For Permitted Liens and Assumed Liabilities, and (III) Granting Related Relief (ECF No. 602) (the "Sale Order"). Subsequently, on April 18, 2024, the Debtors filed their Notice of Closing Date and Request to Enter Conversion Order on April 30, 2024 (ECF No. 603);

WHEREAS, on May 1, 2024, this Court entered its Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code (ECF No. 625) (the "Conversion Order");

WHEREAS, shortly thereafter, on May 1, 2024, Scott N. Brown was appointed as Chapter 7 trustee of the Debtors' bankruptcy Estates (see ECF No. 626);

WHEREAS, on August 1, 2025, the Trustee filed his Motion for Substantive Consolidation of Jointly Administered Debtors (ECF No. 891), which is scheduled for hearing on August 28, 2025 (see ECF No. 892);

### The Transfers, the Claims & the Demand

WHEREAS, consistent with his fiduciary duties and statutory obligations, after his appointment, the Trustee and his professionals began investigating potential recovery opportunities to be pursued for the Estates' benefit;

WHEREAS, prior to the Petition Date, Pan Am had a business relationship with Swift Air pursuant to which it provided goods and/or services to Swift Air;

WHEREAS, based upon, among other things: (a) a review of Swift Air's books, records and bank statements, and (b) an analysis prepared by the Estates' accountants KapilaMukamal, LLP, the Trustee determined that during the ninety (90) day period immediately preceding the

3

Petition Date (the "Preference Period"), Debtor Swift Air made transfers to Pan Am in an amount not less than $330,660 (collectively, the "Preferential Transfers" or the "Transfers");

WHEREAS, the Trustee asserted that the Transfers were avoidable and recoverable under 11 U.S.C. §§ 547 & 550 because the Transfers (i) were made to or for the benefit of Pan Am, (ii) were made on account of antecedent debts, (iii) were made while Swift Air was insolvent, (iv) were made on or within ninety (90) days of the Petition Date, and (v) enabled Pan Am to receive more than it would receive if the case was a case under Chapter 7, and sent a demand letter to Pan Am (the "Demand Letter") asserting that the Swift Air Estate possessed avoidance claims against Pan Am arising under 11 U.S.C. § 547, et seq. in the total amount of $330,660 (the "Pan Am Claims");

WHEREAS, upon receipt of the Demand Letter, Pan Am's counsel contacted the Trustee, and requested additional time to investigate the Pan Am Claims;

WHEREAS, thereafter, Pan Am proffered certain defenses, including that (a) the Transfers were made in the ordinary course of business between Swift Air and Pan Am, and (b) after certain of the Transfers, it gave new value to or for the benefit of Swift Air (i) not secured by an otherwise unavoidable security interest, and (ii) on account of which new value Swift Air did not make an otherwise unavoidable transfer to or for the benefit of Pan Am, and the Settlement Parties began settlement discussions; and

WHEREAS, given, among other things, the expense and uncertainty of litigation as well as Pan Am's proffered partial defenses, the Settlement Parties agreed to settle all matters between them, on the terms and conditions set forth herein, subject only to Bankruptcy Court approval.

4

## AGREEMENT TO SETTLE

NOW, **THEREFORE,** in consideration of the foregoing, the mutual covenants and considerations set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settlement Parties agree as follows:

1.      **RECITALS:** The Settlement Parties agree that the recitals above are true and correct.

2.      **SETTLEMENT PAYMENT:** Subject only to entry of a final, non-appealable order of the Bankruptcy Court (the "Approval Order") approving the settlement that is the subject of this Agreement (the "Settlement"), Pan Am irrevocably agrees to pay to the Trustee, and the Trustee agrees to accept, the sum of $65,000.00 (the "Settlement Amount"), in full and complete settlement of any and all claims that the Trustee has the right to assert against Pan Am arising from or related to the instant Bankruptcy Cases, including, but not limited to, the Transfers and the Pan Am Claims. The Settlement Amount shall be paid by: (a) a check payable to "Scott N. Brown, Trustee", which shall be delivered to the Trustee c/o Bast Amron LLP, at One Southeast Third Avenue, Suite 2410, Miami, Florida 33131; or (b) wire transfer, no later than 30 days after Pan Am's (i) execution of this Agreement and (ii) receipt of an executed I.R.S. Form W-9 from the Trustee, if requested. In the unlikely event that the Settlement is not approved, the Trustee shall promptly return to Pan Am any settlement payment received.

3.      **TOLLING OF STATUTE OF LIMITATIONS:** As a material inducement for the Trustee's entry into this Agreement, Pan Am agrees that all deadlines and/or statutes of limitations for the Trustee to bring claims and causes of action against Pan Am, including, but not limited to, those under 11 U.S.C. §§108, 544, 546, 547, 548, 549, 550 and 551, shall be tolled and extended until thirty (30) days after the Bankruptcy Court approves or denies the Settlement. Notwithstanding anything contained in this Agreement to the contrary, this Paragraph 3 shall be

5

deemed effective, enforceable and binding upon Pan Am immediately upon execution of this Agreement.

4.      **NON-INSIDER OR AFFILIATE REPRESENTATION AND WARRANTY:** As a material inducement for the Trustee's entry into this Agreement, Pan Am represents and warrants to the Trustee that it is neither (i) an "insider of any of the Debtors, nor (ii) an "affiliate" on any of the Debtors, as those terms are defined in Section 101 of the Bankruptcy Code. In the event that the Trustee determines that Pan Am's representation and warranty contained in this Paragraph 4 is materially false, the Trustee shall have the absolute right to (i) retain any payment(s) made by Pan Am under this Agreement, (ii) enforce the terms of this Agreement, and (iii) pursue any and all claims that the Trustee and the Estates may possess against Pan Am but for the release set forth in Paragraph 6 of this Agreement, other than with respect to the Transfers.

5.      **NO ADMISSION OF LIABILITY:** The Settlement Parties are entering into this Agreement to resolve a bona fide dispute, and this Agreement is not intended to be, and shall not be construed to be, an admission of liability of any type by either of the Settlement Parties.

6.      **RELEASE BY THE TRUSTEE:** In consideration for the settlement herein outlined and the covenants contained in this Agreement, the Trustee, on behalf of the Estates, upon entry of the Approval Order and timely receipt of the entirety of the Settlement Amount, hereby releases Pan Am and their officers, directors, employees, agents, representatives, and attorneys (the "Pan Am Released Parties"), jointly and severally, from any and all claims, counterclaims, avoidance actions, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity, including without limitation, claims arising from or related to any act, omission, communication, transaction, occurrence, representation, misrepresentation, deceit, statement, promise, damage, breach of contract, fraud, commission of any tort, violation of

6

any state or federal law, or usury, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, or any other matter whatsoever or thing done, omitted or suffered to be done by the Pan Am Released Parties arising from or related to (i) the business relationship between Debtor Swift Air and the Pan Am Released Parties, (ii) the Bankruptcy Cases, and (iii) the Pan Am Claims. This release shall not include and does not affect Pan Am's obligations to the Trustee and the Estates pursuant to this Agreement.

7.    **RELEASE BY PAN AM**: In consideration for the Settlement herein outlined and covenants contained in this Agreement, Pan Am, on behalf of themselves and the Pan Am Released Parties, upon entry of the Approval Order, hereby releases the Trustee and the Estate, and their respective employees, agents, representatives, attorneys and accountants (the "Trustee Released Parties"), jointly and severally, from any and all claims, counterclaims, avoidance actions, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity, including without limitation, claims arising from or related to any act, omission, communication, transaction, occurrence, representation, misrepresentation, deceit, statement, promise, damage, breach of contract, fraud, commission of any tort, violation of any state or federal law, or usury, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, or any other matter whatsoever or thing done, omitted or suffered to be done by any of the Trustee Released Parties arising from or related to (i) the business relationship between the Debtors and the Pan Am Released Parties, (ii) the Bankruptcy Cases, (iii)

7

the Pan Am Claims, and (iv) the Trustee's administration of the instant Estates. This release shall not include and does not affect the Trustee's obligations to Pan Am pursuant to this Agreement.

8.    **CHOICE OF LAW**: This Agreement shall be construed in accordance with the laws of the State of Florida, both substantive and remedial.

9.    **ENTIRE AGREEMENT**: This Agreement represents the entire understanding and agreement between the Settlement Parties, and supersedes any and all other agreements, either oral or in writing, between the Settlement Parties hereto with respect to the subject matter hereof. The Settlement Parties stipulate and agree that no promise, warranty, representation, inducement or agreement, written or oral, not expressed or referred to in this Agreement, has been made and/or relied upon.

10.    **MODIFICATIONS**: This Agreement may not be modified or amended in any respect whatsoever, except by a writing signed by all of the Settlement Parties.

11.    **WAIVER**: No waiver of any provisions of this Agreement shall be valid unless in writing and signed by the party against whom charged.

12.    **CONSTRUCTION AND HEADINGS**: In giving meaning to this Agreement, the singular shall be held to include the plural, and the plural shall be held to include the singular. The Settlement Parties agree that the section headings contained herein are included for convenience only and are not to be deemed part of this Agreement.

13.    **BINDING EFFECT**: This Agreement, upon execution by all parties, is binding upon the Settlement Parties hereto, their heirs, successors, and assigns, subject only to entry of the Approval Order.

14.    **REPRESENTATION AND WARRANTIES**: The Settlement Parties mutually represent and warrant that: (a) they have full power and authority to negotiate, execute and perform the terms and provisions of this Agreement; (b) the execution of this Agreement does not put either

8



of the Settlement Parties in violation of any agreements to which they are a party; and (c) the Agreement is duly executed and delivered by the Settlement Parties and constitutes a legal, valid, and binding obligation enforceable in accordance with the terms hereof

15.    **NO SEVERABILITY**: If any part of this Agreement is deemed to be invalid in any court of law, the remaining provisions of this Agreement will thereby also be rendered invalid and of no effect, and may not be enforced.

16.    **ENFORCEMENT**: Each party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Settlement Parties irrevocably agree that the United States Bankruptcy Court, Southern District of Florida, in the above-captioned cases, has personal jurisdiction over the Settlement Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

17.    **DRAFTING, ADVICE OF COUNSEL, AND VOLUNTARY EXECUTION:** The Settlement Parties acknowledge and agree that: (a) each of the Settlement Parties has read, fully understands, and agrees to each page of this Agreement; (b) each of the Settlement Parties has had the benefit of the advice of counsel and has signed the Agreement only after due consideration and consultation with its respective attorneys; (c) each of the Settlement Parties has participated fully in negotiating and drafting the terms hereof; and (d) each of the Settlement Parties has entered into this Agreement freely voluntarily, without duress, coercion or fraudulent inducement, and for valuable consideration. Accordingly, this Agreement shall not be more strictly construed against any of the Settlement Parties than against the other.

18.    **CONSIDERATION**: The Settlement Parties hereto acknowledge and agree that each is foregoing certain rights and assuming certain duties and obligations, which, but for this Agreement, would not have been foregone or assumed. Accordingly, the Settlement Parties agree

9

that this Agreement is fully and adequately supported by consideration and is fair and reasonable in all of its terms.

19.     **COUNTERPARTS.** This Agreement may be executed in counterparts which, taken together, shall constitute one and the same agreement, and facsimile or PDF signatures shall be deemed originals.

20.     **ATTORNEYS' FEES AND COSTS:** Each of the Settlement Parties agrees to bear its own respective attorneys' fees, costs and expenses incurred in connection with the Bankruptcy Case, including, but not limited to, the costs incurred in connection with the negotiation and preparation of this Agreement.

21.     **APPROVAL ORDER:** The Trustee shall promptly seek the entry of the Approval Order from the Bankruptcy Court.

22.     **BEST EFFORTS:** The Settlement Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Settlement Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

23.     **FURTHER COOPERATION:** The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein.

**SIGNATURES ON FOLLOWING PAGE**

10

DATED: August __, 2025

SCOTT N. BROWN, as Chapter 7 trustee of the jointly administered bankruptcy estates of (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC

_____
Print Name

Scott N. Brown, as Ch 7 Trustee

DATED: August 28, 2025

Pan Am Flight Academy, LLC
(f/k/a Pan Am Flight Academy Inc. d/b/a
Pan Am International Flight Academy)

By: _Jeffrey J. Portnova_____
Its: _President_____

RPMayer & Associates, LLC
N81 W5912 Orchard Drive
Cedarburg, WI 53012

James R. Tolzien
Chief Executive Officer
EALG Interim Solution, Inc. (f/k/a
Eastern Air Lines Group, Inc.)
1395 Brickell Avenue, Suite 960
Miami, Florida 33131

Vickie M. Duncan, Esq.
Oerlikon Surface Solutions,
Americas
Attn: Legal Dept.
1101 Prospect Avenue,
Westbury, NY 11590.

S. David Sheffman,Esq
Law office of Alexis Gonzalez,P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133

Three Brothers Family Office LLC
c/o Adam Greenberg
410 Park Avenue, 22nd Floor
New York, NY 10022

High Class Aero Inc.
6991 NW 82nd Ave
Bay 11
Medley, FL 33166

KMA ZUCKERT LLP
c/o Nicholas E. Pantelopoulos, Esq
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134

City of Philadelphia Law Department
Tax Litigation & Collections Unit
c/o Megan N. Harper
1401 JFK Blvd., 5th Fl.
Philadelphia, PA 19102

00814892.DOCX
4898-3936-0352, v. 1