UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

AEROTECH MIAMI INC. d/b/a iAero Tech, et al.,

Debtors.

_____/

Chapter 7 Cases (Converted)

Case No. 23-17503-RAM
(Substantively Consolidated)

**TRUSTEE, SCOTT N. BROWN'S MOTION (A) TO APPROVE AGREEMENT TO COMPROMISE CONTROVERSY AND MUTUAL GENERAL RELEASE BETWEEN TRUSTEE AND FORMER OFFICERS AND DIRECTORS OF DEBTORS, AND (B) FOR PAYMENT OF CONTINGENCY FEE TO BAST <u>AMRON LLP FROM SETTLEMENT FUNDS</u>**

Scott N. Brown, as Chapter 7 trustee (the "Trustee") of the substantively consolidated bankruptcy estates (the "Estates") of (i) Aerotech Miami Inc. d/b/a iAero Tech; (ii) AeroThrust Delta PBH, LLC; (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC; (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC; (vi) iAero 11B Investments LLC; (vii) iAero Group Bidco Inc.; (viii) iAero Group Holdco 6 LLC; (ix) iAero Group Intermediate Inc.; (x) iAero Group Parent LLC; (xi) iAero Thrust Engine Test Center, LLC; (xii) iAero Thrust LLC; (xiii) JAM Aerospace Parts, LLC; (xiv) New Swift Air Holdings, L.L.C.; (xv) Swift Air, L.L.C. d/b/a iAero Airways; and (xvi) Swift Air Travel, LLC, through counsel and pursuant to Federal Rule of Bankruptcy Procedure 9019, and 11 U.S.C. §§ 105 and 330, files this *Motion (A) to Approve Agreement to Compromise Controversy and Mutual General Release Between Trustee and Former Officers and Directors of Debtors, and (B) for Payment of Contingency Fee to Bast Amron LLP From Settlement Funds* (the "Motion"), and in support thereof states as follows:

## I. Summary of Requested Relief

1. By this Motion, the Trustee seeks entry of an order: (a) approving the settlement between (a) the Trustee, and (b) certain individuals who formerly served as officers and/or directors of the Debtors (the "Former D&Os," and together with the Trustee, the "Settlement Parties")[1] on the terms and conditions set forth more fully in the Settlement Agreement attached hereto at **Exhibit A** and incorporated herein by reference (the "Agreement");[2] and (b) approving the payment of the 35% contingency fee to Trustee's special litigation counsel, Bast Amron LLP ("Bast Amron") from the settlement proceeds.

2. Pursuant to the terms of the Agreement, Former D&Os have agreed to cause the Insurers to pay the Estate $5,500,000.00 in cleared funds (the "Settlement Amount"), in full and final settlement of any and all claims the Estate may possess against the Former D&Os arising from or related to the instant Bankruptcy Case.

3. As detailed below, the Trustee believes that the Settlement falls well above the lowest point in the range of reasonableness and thus, meets the standards set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544 (11th Cir. 1990). Accordingly, the Trustee asserts that the Settlement is in the best interests of this Estate and urges the Court to approve same and enter the proposed Order in substantially the form attached hereto at **Exhibit B**.

---

[1] As a material term of the Agreement, the Former D&Os have required that the names of individuals subject to the Agreement be redacted and remain confidential. However, a copy of the unredacted Agreement containing the names of the Former D&Os shall be provided to the Court for *in camera* review, and to the United States Trustee upon request.

[2] This Motion contains a summary of the key terms of the Agreement. The terms and conditions of the Agreement control and all interested parties are urged to review same. All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Agreement. The settlement detailed in the Agreement may sometimes be referred to as the "Settlement."

## II. Limited Relevant Background

4.        On September 19, 2023 (the "Petition Date"), these cases commenced with the filing of voluntary skeleton Chapter 11 petitions by (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC (collectively, the "Debtors," and the cases, the "Bankruptcy Cases").

5.        From the Petition Date through May 1, 2024 (the "Conversion Date"), the Debtors operated as debtors-in-possession.  However, subsequent to the Petition Date, only Debtor Swift Air, L.L.C. was operational.

6.        On September 20, 2023, the Debtors filed their *Ex Parte Motion for Joint Administration* (ECF No. 5), and shortly thereafter, this Court entered its *Order Granting Debtors' Ex Parte Motion for Joint Administration* (ECF No. 14).

7.        On April 12, 2024, the Debtors filed their *Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* (ECF No. 601).

8.        On April 14, 2024, this Court entered the Sale Order (*see* ECF No. 602). Subsequently, on April 18, 2024, the Debtors filed their *Notice of Closing Date and Request to Enter Conversion Order on April 30, 2024* (ECF No. 603).

4931-4466-7573, v. 5

9.     On May 1, 2024, following a sale of substantially all of the Debtors' assets, this Court entered its *Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* (ECF No. 625).

10.    Shortly thereafter, on May 1, 2024, Scott N. Brown was appointed as Chapter 7 trustee of the Debtors' bankruptcy estates (*see* ECF No. 626).

11.    On August 1, 2025, the Trustee filed his *Motion for Substantive Consolidation of Jointly Administered Debtors* (ECF No. 891); and on September 3, 2025, this Court entered its *Order Granting Trustee, Scott N. Brown's Motion for Substantive Consolidation of Jointly Administered Debtors Effective as of the Conversion Date, May 1, 2024* (ECF No. 913).

A.  **The Claims & Notice**

12.    Consistent with his fiduciary duties and statutory obligations, after his appointment, the Trustee and his professionals began investigating potential recovery opportunities to be pursued for the Estates' benefit.

13.    The Trustee conducted an investigation of possible claims against the Former D&Os, which included, among other things: (a) a review of the Debtors' books, records, and systems; and (b) prior investigations conducted by or on behalf of the Debtors prior to the Trustee's appointment. Upon the conclusion of that investigation, the Trustee ascertained that sufficient facts existed to issue a notice of claim to the Former D&Os and the relevant insurance carriers.

14.    Prior to the commencement of the Bankruptcy Cases, the Debtors purchased the following Directors' and Officers' Liability insurance policies: (i) Chubb Illinois Union Insurance Co. policy no. G46772015 003; (ii) Everest EX Excess, policy no. PC5EX00119-201; and (iii)

4

4931-4466-7573, v. 5

Chubb ACE American Insurance, policy no. DOX G46771977 003 (together, Chubb and Everest are the "Insurers;" and the policies, the "Policies").

15.     On July 25, 2025, the Trustee served notice of claims on the Former D&Os and the Insurers (the "Notice"), which included a draft complaint alleging various causes of action (the "Claims").

## B. The Tolling Agreements

16.     After service of the Notice, the Settlement Parties began preliminary discussions regarding the Claims and potential settlement of same.  On or about September 17, 2025, the Settlement Parties entered into a *Tolling Agreement* (the "Tolling Agreement") pursuant to which, among other things, the Settlement Parties agreed any applicable statute of limitation or other applicable Timing Defense,[3] to the extent any applicable limitation period had not already expired, was tolled from the date of the Tolling Agreement through October 3, 2025 (the "Tolling Period"), with respect to the Claims while the Settlement Parties continued discussions.

17.     Thereafter, the Settlement Parties subsequently agreed to several extensions of the Tolling Period through amendments to the Tolling Agreement to allow the Settlement Parties sufficient time to discuss settlement options and/or otherwise resolve disputes among the Settlement Parties as follows:

   a. *First Amendment to Tolling Agreement*, dated October 1, 2025, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through October 17, 2025;

---

[3] Defined as including "any defenses or affirmative defenses to Trustee's claims and/or causes of action that the [Former D&Os] may have to the extent based upon (1) any statute of limitations; (2) laches, waiver, or estoppel; and/or (3) any failure of the Trustee to institute or commence litigation or other legal proceedings within some specified period, before a specified date, or before the happening of a specified event."

b. *Second Amendment to Tolling Agreement*, dated October 15, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through October 31, 2025;

c. *Third Amendment to Tolling Agreement*, dated October 29, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through April 30, 2026;

d. *Fourth Amendment to Tolling Agreement*, dated April 24, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through May 15, 2026;

e. *Fifth Amendment to Tolling Agreement*, dated May 14, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through May 22, 2026; and

f. *Sixth Amendment to Tolling Agreement*, dated May 21, 2026, which among other things, extended the Tolling Period to "the earliest of (i) the date on which an order approving the settlement agreement becomes final and non-appealable, (ii) 10 days after an order denying approval of the settlement agreement becomes final and non-appealable; or (iii) October 23, 2026."

## C. **The Mediation**

18.    During the Tolling Period, the Settlement Parties agreed to engage in pre-suit mediation of the Claims, further to which the Trustee voluntarily provided the Former D&Os and Insurers with a significant production of documents relevant to the Claims.  Also during the course of pre-suit mediation, the Former D&Os asserted that, should the Trustee file the Claims, they would have meaningful defenses to same, which they intended to vigorously pursue.

19.    On March 16, 2026, the Settlement Parties attended an in-person mediation with the Honorable Shelley C. Chapman (Ret.) (the "Mediator") in New York, NY, which settlement discussions continued for several weeks after the in-person mediation session was adjourned.

## III. **The Settlement**

20.    Notwithstanding that the Trustee disputes certain of the Former D&Os' asserted defenses and the Former D&Os dispute certain of the Trustee's assertions, given, among other things, the expense and uncertainty of litigation as well as the Former D&Os' asserted defenses

6

and an analysis of same conducted by the Trustee and his professionals, the Settlement Parties eventually reached a settlement in principle, negotiated the terms of the settlement, and entered into the Agreement.

21.     Pursuant to the terms of the Agreement, the Former D&Os have agreed to cause the Insurers to pay to the Trustee, and, subject to this Court's approval, the Trustee has agreed to accept, the Settlement Amount in the sum of $5,500,000.00, in full and complete settlement of any and all claims that the Trustee has, may have, or has the right to assert, against Former D&Os arising from or related to the instant Bankruptcy Cases, including, but not limited to the Claims as stated in the Notice, payable no later than 20 days following entry of an order granting the instant Motion and approving the Agreement becoming final and non-appealable.

22.     The Agreement also contains, among other things, mutual releases, as follows:

> ***Trustee Release of [Former D&Os].***  The Trustee, solely in his capacity as Chapter 7 Trustee of the Debtors and the Estates, releases and forever discharges each of the [Former D&Os] and each of their respective insurers (including, but not limited to, the Insurers and their counsel in connection with the Notice and Draft Complaint), employees, representatives, agents, professionals (including attorneys and accountants) and each of their respective employees, as well as any other insured persons covered by the terms of the Policies (collectively, the "[Former D&Os] Released Parties"), from any and all actions, arbitrations, claims, including, without limitation the Claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether contractual or extracontractual or for bad faith, insured or uninsured, whether known or unknown, and whether now accrued or hereafter maturing, which the Trustee ever had, now has or hereafter can, shall or may have against any of the [Former D&Os] Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause,

7

omission, or thing whatsoever, including, related to, arising out of, or in connection with the Debtors, the Bankruptcy Cases, or the Estates.  For the avoidance of doubt, the Trustee hereby waives any and all rights to seek surcharge, disgorgement, or administrative expense claims against any [Former D&Os] Released Party, and covenants that no such claims shall be pursued on behalf of the Estates following the Effective Date of this Agreement. Notwithstanding the breadth of the foregoing release, nothing contained in this Section or elsewhere in this Agreement shall release the [Former D&Os] from their obligations set forth in this Agreement.

***[Former D&Os] Released Parties' Release of Trustee and Estates.*** The [Former D&Os] each release and forever discharge the Trustee, in his capacity as Chapter 7 Trustee of the Debtors and the Estates, and his employees, representatives, agents, professionals (including attorneys and accountants), and each of their respective employees (collectively, the "Trustee Released Parties"),  from any and all actions, arbitrations, claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the [Former D&Os] ever had, now has or hereafter can, shall or may have against any of the Trustee Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, related to, arising out of or in connection with the Debtors, the Bankruptcy Cases, the Estates, or the Trustee's administration of the Estates.  For the avoidance of doubt, the [Former D&Os] also waive any proofs of claim filed by them or on their behalf in the Bankruptcy Cases or any scheduled claims, all of which shall be deemed to be disallowed upon the Effective Date of this Agreement, and each of the [Former D&Os] agree that they shall be entitled to no distribution from the Estates.  For the avoidance of doubt, the [Former D&Os] hereby waive any and all right to seek surcharge, disgorgement, or administrative expense claims against any Trustee Released Party, and covenant that no such claim shall be pursued on behalf of the [Former D&Os] following the Effective Date of this Agreement. Notwithstanding the breadth of the foregoing release, nothing

8

contained in this Section or elsewhere in this Agreement shall release the Trustee from his obligations set forth in this Agreement.

***Mutual Release By and Between [Former D&Os] Released Parties.*** The [Former D&Os] each release and forever discharge each and every other [one of the Former D&Os], and each of their respective employees, representatives, agents, professionals (including attorneys and accountants) and each of their respective employees (collectively, the "Cross Released Parties"), from any and all actions, arbitrations, claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the [Former D&Os] ever had, now has or hereafter can, shall or may have against any of the Cross Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, related to, arising out of, or in connection with the Debtors, the Bankruptcy Cases, the Estates, the Claims, the subject matter of this Agreement, or the Trustee's administration of the Estates.   Notwithstanding the breadth of the foregoing release, nothing contained in this Section or elsewhere in this Agreement shall release any [of the Former D&Os] from their obligations set forth in this Agreement.

The Insurers agree that they will not file a proof of claim, or in any other way seek recovery or recoupment of the Settlement Payment or defense costs paid in this matter from the Debtors or the Estate.

23.    The Agreement also contains a confidentiality provision, which states as follows:

**Confidentiality.** The Parties shall use their objectively reasonable efforts to keep confidential the nature of the Claims and the underlying subject matter, other than as required by any applicable law, rule, professional standard, regulation, policy statement, court order, legal, judicial, or administrative process, or other similar processes (whether by oral questions, interrogatories, requests for information or documents in legal or regulatory proceedings, subpoena, civil investigative demand, or other similar process). **Under no circumstance shall any Party disclose the identity of any [Former D&Os] Released Party in a public filing, unless**

9

**required by law.** Notwithstanding anything contained herein to the contrary, the Parties agree and acknowledge that the Trustee may file the instant Agreement as an attachment to the Approval Motion, with the names of the [Former D&Os] redacted.

24.     As set forth above, the terms outlined in this Motion are only intended to summarize the key terms of the Agreement and are not intended to nor shall they modify, alter, amend, change, control, contradict, or compete with the terms of the Agreement. Rather, the terms of the Agreement shall control, especially in the event of any inconsistency or ambiguity between this Motion and the terms of the Agreement. Accordingly, all creditors and interested parties are encouraged to read the Agreement for its terms and not to rely upon the summary set forth in this Motion.

## IV. Legal Standard for Settlement

25.     Before addressing the substantive issues, it is important to note that the Agreement arose from good-faith settlement discussions and negotiations between the Settlement Parties, and following the Trustee's professionals' review of the proffered defenses. The settlement discussions spanned a period of several weeks and were facilitated by the Mediator; and the Settlement was the result of a mediator's proposal. The Agreement was negotiated at arm's-length and approval is in accord with the strong public policy which favors settlement in all types of litigation. *In re Grau,* 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).

26.     Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

27.     As courts in this District have previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air,*

10

*Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985); *In re Prudence Co.*, 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom. *Stein v. McGrath*, 306 U.S. 636 (1939)).

28.    The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'" *In re Arrow Air, Inc.*, 85 B.R. at 891 (quoting *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d at 189; *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983)).

29.    According to the United States Eleventh Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

> (a) the probability of success in the litigation;
> (b) the difficulties, if any, to be encountered in the matter of collection;
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d at 1549.  *See also In re Arrow Air, Inc.*, 85 B.R. at 891 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d at 602).

30.    In the instant case, the Trustee asserts that each of the four *Justice Oaks* factors weighs heavily in favor of approval of the Agreement:

> a.    *Probability of Success in Litigation:* The Trustee believes that approval of the Agreement is in the best interests of the Estate because, among other things, the Agreement eliminates the need for costly, time-consuming, and risky litigation.

And while the Trustee believes that it is more likely than not that he would ultimately prevail in litigation, given the inherent risks of litigation, the complexity and subjectivity of Former D&Os proffered defenses, the Trustee's professionals' review of the proffered defenses, the wasting nature of the Policies, the likelihood of significant pre-trial discovery and motion practice, and the certainty to be provided under the Agreement, from the perspective of the Trustee, the Settlement falls well within the reasonable range of anticipated litigation outcomes.

b. *Difficulties Associated with Collection:* As with most pre-judgment settlements, the Trustee does not have financial information from the Former D&Os, who are scattered across the country. And while there could be the possibility of collection difficulties in the event of a judgment exceeding the limits of the underlying Policies, collection risk was not a material factor in the Trustee's decision to enter into the Agreement given the availability of insurance coverage.

c. *Complexity, Expense, Inconvenience, and Delay:* As with all litigation, there is expense, inconvenience, and delay that would undoubtedly arise. The Claims as alleged in the Notice are extremely complex, the parties and their respective counsel are extremely sophisticated, and full discovery in this matter would be very costly and likely involve the production and review of millions of pages of documents, and the likelihood of costly and time-consuming discovery disputes. Moreover, proving such claims will likely require the need for at least one, and potentially multiple experts on various issues, and the costs attendant to such litigation are likely to be extremely significant, with no assurance of a successful outcome. Lastly, litigation of the Claims would take no less than one year, and likely far

12

longer, with the possibility of collection activity to follow, pushing the timeline back on payment to creditors by several years, assuming that the Trustee prevails in the litigation.

    d.   *Paramount Interest of Creditors:*  Finally, the Trustee asserts that the "paramount interest of creditors" prong of the *Justice Oaks* test is satisfied because notwithstanding the proffered defenses, the Agreement will result in a meaningful recovery for those creditors entitled to a distribution pursuant to the terms of the "waterfall" set forth in the Sale Order,[4] particularly the Chapter 11 administrative trade creditors, and eliminates further professional fees and costs associated with investigation and litigation of the claims against the Fomer D&Os.

31.    Accordingly, for the reasons set forth herein, the Trustee asserts that the Agreement meets the standards set forth in *In re Justice Oaks II*, and therefore, recommends approval of the Settlement because it is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the best interest of the Estate and its creditors.

### V. Motion to Approve Payment of Contingency Fee to Bast Amron from Settlement Proceeds

32.    On September 16, 2024, this Court entered its *Order Granting Chapter 7 Trustee, Scott N. Brown's Motion to Employ Brett M. Amron, Esquire and Bast Amron LLP as Special Litigation Counsel to the Estate Effective as of August 20, 2024* (ECF No. 819) (the "Special Counsel Employment Order").

33.    The Special Counsel Employment Order provides, in pertinent part, as follows:

> The Chapter 7 Trustee, Scott N. Brown, is authorized to employ Brett M. Amron, Esquire and Bast Amron LLP ("BA" or "Bast Amron"), a firm in which the Trustee is a partner, as special

---

[4] *See* ECF No. 602, Par. 39.

litigation counsel to the Estates, on the terms and condition set forth in the Motion.

Without limiting the generality of the foregoing, BA is authorized to investigate and prosecute any and all potential recovery opportunities on a pure contingency fee basis of 35% of all gross recoveries obtained by the Estate, regardless of source and regardless of whether or not litigation is commenced, plus an additional 5% for appellate work, if any, plus reimbursement of actual costs incurred, including, but not limited to, any fees, costs, and expenses associated with the retention of any expert witnesses and the use of any e-discovery/data management platforms. The entitlement to the additional fee for appellate work will accrue only if a notice of appeal is filed in connection with any particular litigation matter.  BA shall not be entitled to a contingent fee for the reduction of claims asserted by any target of a potential litigation claim, without prejudice to its right to seek reasonable fees and costs based on time spent and the results obtained objecting to the particular claim(s).  BA shall also be entitled to seek compensation in its capacity as general counsel for legal services not directly related to the investigation and prosecution of Potential Claims, including legal services provided in connection with necessary case and claims administration and other matters.

34.     If the Settlement is approved by this Court, Bast Amron is entitled to receive $1,925,000.00 from the $5,500,000.00 settlement for its contingency fee.

35.     Accordingly, the Trustee seeks authority to disburse the sum of $1,925,000.00 to Bast Amron upon approval of the Settlement and receipt of the Settlement Amount, without further order.

## VI. Other Related Relief

### A. Notice

36.     The Trustee will serve this Motion and the Notice of Hearing, when issued, on those parties entitled to notice pursuant to this Court's *Second Amended Order Granting Trustee, Scott N. Brown's Second Ex Parte Motion for Entry of Order to Limit Notice and Establish Notice Procedures* (ECF No. 874) (the "Order Limiting Notice"), and because under the terms of the

14

Order Limiting Notice, given the amount of the settlement, the Trustee would be obligated to serve the instant Motion on all creditors (at a cost likely to exceed $25,000), including pre-petition creditors who would not be entitled to receive a distribution under the terms of the "waterfall," the Trustee will, contemporaneously with the filing of the instant Motion, seek entry of an order limiting notice to: (i) all parties entitled to notice under the Order Limiting Notice, (ii) all CMECF recipients, and (iii) all creditors that filed post-conversion proofs of claim (as such creditors would be the only ones entitled to a distribution under the "waterfall"). The Trustee requests that this Court make a determination that the requisite notice has been provided to all parties entitled to notice.

### B. *Authority to Execute Necessary Documents*

37.    Assuming that the Agreement is approved, the Trustee seeks authority to: (a) take such actions; and (b) execute such documents, as he deems reasonable, necessary and/or desirable to effectuate the Agreement.

### C. *Retention of Jurisdiction*

38.    Finally, assuming that the Agreement is approved, the Trustee requests that the Court retain sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement and enforce the terms and conditions of the Agreement, the Motion and the Approval Order, and all other related matters; and (b) adjudicate any and all disputes of any type arising from or related to the Agreement, this Motion, the Approval Order, and all other related matters.

**WHEREFORE**, Scott N. Brown, as Chapter 7 trustee of the substantively consolidated bankruptcy estates of (i) Aerotech Miami Inc. d/b/a iAero Tech, (ii) AeroThrust Delta PBH, LLC, (iii) AeroThrust Holdings Aircraft and Engine Leasing, LLC, (iv) AeroThrust Holdings Leasing, LLC; (v) iAero 11 Investments LLC, (vi) iAero 11B Investments LLC, (vii) iAero Group Bidco

15

Inc., (viii) iAero Group Holdco 6 LLC, (ix) iAero Group Intermediate Inc., (x) iAero Group Parent LLC, (xi) iAero Thrust Engine Test Center, LLC, (xii) iAero Thrust LLC, (xiii) JAM Aerospace Parts, LLC, (xiv) New Swift Air Holdings, L.L.C., (xv) Swift Air, L.L.C. d/b/a iAero Airways, and (xvi) Swift Air Travel, LLC, respectfully requests this Honorable Court enter an Order: (a) granting the instant Motion; (b) finding that the Agreement meets the factors set forth in *In re Justice Oaks II, Ltd.* and falls above the lowest point in the range of reasonableness; (c) approving the Agreement in its entirety; (d) approving the payment of the contingency fee to Bast Amron LLP in the amount of $1,925000.00; (e) authorizing the Trustee to disburse the contingency fee in the amount of $1,925,000.00 to Bast Amron LLP upon receipt of the Settlement Amount and without further order of this Court; and (f) granting such other and further relief as this Court deems just and proper.

Dated: June 16, 2026

Respectfully submitted,

Bast Amron LLP
*Special Litigation Counsel to the Trustee, Scott N. Brown*
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: 305.379.7904
Email: bamron@bastamron.com
Email: dquick@bastamron.com

By:__/s/ Dana R. Quick_____
      Brett M. Amron, Esq. (FBN 148342)
      Dana R. Quick, Esq. (FBN 0074402)

Case No.: 23-17503-BKC-RAM
(Substantively Consolidated)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished as follows:

On June 16, 2026 Via CM/ECF to:

- **AIS Portfolio Services LP (Sharma)**   amit.sharma@aisinfo.com
- **Magda Abdo-Gomez**   maggie@magtaxatty.com
- **Joaquin J Alemany**   joaquin.alemany@hklaw.com, HAPI@HKLAW.COM
- **Brett M Amron**   bamron@bastamron.com, mdesvergunat@bastamron.com,jmiranda@bastamron.com,sroque@bastamron.com
- **John Arrastia**   jarrastia@continentalpllc.com, hgray@continentalpllc.com
- **Paul A Avron**   pavron@bergersingerman.com, efile@bergersingerman.com;efile@ecf.inforuptcy.com
- **Nicholas B. Bangos**   nick@nbbpa.com, bazban13@gmail.com
- **James O Birr**   jbirr@jimersonfirm.com
- **Sara Lynne Brauner**   sbrauner@akingump.com, nymco@akingump.com
- **Christopher Broussard**   cbrouss.law@gmail.com, cbrouss.law@gmail.com
- **Austin B Calhoun**   acalhoun@lesaklaw.com, sbraswell@lesaklaw.com;jfarber@lesaklaw.com
- **Kevin Michael Capuzzi**   kcapuzzi@beneschlaw.com, docket2@beneschlaw.com;lmolinaro@beneschlaw.com
- **Angelo M Castaldi**   acastaldi@continentalpllc.com
- **Philip D. Dublin**   pdublin@akingump.com, nymco@akingump.com
- **Lara Roeske Fernandez**   lfernandez@trenam.com, mmosbach@trenam.com;mwoods@trenam.com;lfernandez@ecf.courtdrive.com;mwoods @ecf.courtdrive.com;mmosbach@ecf.courtdrive.com
- **Michael Fishel**   michael@FishelLawGroup.com
- **Michael I Goldberg**   michael.goldberg@akerman.com, charlene.cerda@akerman.com
- **Christina S Gornail**   cgornail@phillipsrichard.com, mmcdougald@phillipsrichard.com
- **Jessika A Graham**   jgraham@wsh-law.com, lmartinez@wsh-law.com
- **Andrea S. Hartley**   andrea.hartley@akerman.com, janet.salinas@akerman.com
- **Monique D Hayes**   monique@dgimlaw.com, moniquedhayes@gmail.com;colleen@dgimlaw.com;monique123@ecf.courtdrive.com;m onique@dgimlaw.com
- **Nicole Grimal Helmstetter**   nhelmstetter@joneswalker.com, mgreen@joneswalker.com;ksantacruz@joneswalker.com;nicole-helmstetter-8102@ecf.pacerpro.com
- **Kevin Hoyos**   hoyosk@gtlaw.com, perezan@gtlaw.com;miaecfbky@gtlaw.com
- **John B. Hutton III**   huttonj@gtlaw.com, MIALitDock@gtlaw.com;miaecfbky@gtlaw.com;perezan@gtlaw.com
- **Christopher A Jarvinen**   cjarvinen@bergersingerman.com, efile@bergersingerman.com;efile@ecf.courtdrive.com

4902-8823-0062, v. 4

- **Jonathan H Kaskel**    jonathan.kaskel@dentons.com, nancy.salazar@dentons.com,docket.general.lit.atl@dentons.com
- **Peter J Klock**    pklock@bastamron.com, jmiranda@bastamron.com;eService@bastamron.com;mhernandez@bastamron.com
- **Gerard M Kouri Jr.**    gmkouripaecf@gmail.com, gmkouri@bellsouth.net
- **Jeffrey T. Kucera**    jeffrey.kucera@klgates.com, etna.medina@klgates.com;docketing.east@klgates.com
- **Meghhaa Kumaarr**    mmahajan@aglawpa.com, la@aglawpa.com
- **John J Lamoureux**    jlamoureux@carltonfields.com, delliott@carltonfields.com;tpaecf@cfdom.net
- **Linda M Leali**    lleali@lealilaw.com, lkennedy@lealilaw.com;LindaLealiPA@jubileebk.net;nahomy@lealilaw.com
- **James Randolph Liebler**    jrlii@lgplaw.com, mkv@lgplaw.com;de@lgplaw.com
- **Isaac M Marcushamer**    isaac@marcushamer.com, colleen@ecf.courtdrive.com;colleen@dgimlaw.com;isaac_876@ecf.courtdrive.com;eservice@dgimlaw.com
- **Jerry M Markowitz**    jmarkowitz@mrthlaw.com, ycandia@mrthlaw.com,rrubio@mrthlaw.com,mrthbkc@gmail.com,gruiz@mrthlaw.com, markowitzjr73991@notify.bestcase.com,jmarkowitz@ecf.courtdrive.com
- **Glenn D Moses**    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jnunez@venable.com;imalcolm@ecf.courtdrive.com;btraina@venable.com
- **Barry E. Mukamal**    bemtrustee@kapilamukamal.com
- **Ari Newman**    newmanar@gtlaw.com, perezan@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Nicholas E Pantelopoulos**    nep@kmazuckert.com
- **Jennifer C. Pratt**    JCPratt@Prada.law, jcprattlaw@gmail.com
- **Leanne McKnight Prendergast**    Leanne.Prendergast@pierferd.com, l3annemp@gmail.com
- **Lauren Baio Pultro**    lauren.pultro@arlaw.com, ari.martinez@arlaw.com;jessica.bowers@arlaw.com
- **Dana R Quick**    dquick@bastamron.com, jmiranda@bastamron.com;mdesvergunat@bastamron.com;eService@bastamron.com
- **Alexis S Read**    asr@alexisreadlaw.com, asr@readlawpllc.com
- **Patricia A Redmond**    predmond@stearnsweaver.com, jmartinez@stearnsweaver.com;mfernandez@stearnsweaver.com;dhalperin@stearnsweaver.com;lcruz@stearnsweaver.com
- **Eric A Rosen**    erosen@fowler-white.com, CAfilings@fowler-white.com
- **Mark Alan Salzberg**    mark.salzberg@squirepb.com, shannon.munsell@squirepb.com;FLA_DCKT@squirepb.com;mark-a-salzberg-2003@ecf.pacerpro.com;Gregory.davis@squirepb.com
- **Theodore Sandler**    tsandler@sandlerlawpa.com
- **Steven D Schneiderman**    Steven.D.Schneiderman@usdoj.gov

4902-8823-0062, v. 4

Case No.: 23-17503-BKC-RAM
(Substantively Consolidated)

- **Adam Louis Schwartz**   aschwartz@vedderprice.com, adam-schwartz-5802@ecf.pacerpro.com,ecfmidocket@vedderprice.com,wthorsness@vedderprice.com,mjedelman@vedderprice.com
- **Peter E. Shapiro**   pshapiro@shapirolawpa.com, shapiro.peterr101923@notify.bestcase.com
- **Stanley David Sheffman**   dsheffman@aglawpa.com, la@aglawpa.com
- **Zach B Shelomith**   zbs@shelomith.law, info@shelomith.law;alt@shelomith.law;agp@shelomith.law;drp@shelomith.law;mpc@shelomith.law;Shelomith.ZachB.B105131@notify.bestcase.com;zshelomith@ecf.inforuptcy.com
- **Ira Scot Silverstein**   iss@lgplaw.com, de@lgplaw.com
- **Paul Steven Singerman**   singerman@bergersingerman.com, hmoreno@bergersingerman.com;efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Steven J. Solomon**   steven.solomon@gray-robinson.com, Ana.Marmanillo@gray-robinson.com
- **Gavin N Stewart**   bk@stewartlegalgroup.com
- **Jesus M Suarez**   Jsuarez@continentalpllc.com, ggutstein@continentalpllc.com
- **Raychelle A Tasher**   Raychelle.Tasher@lewisbrisbois.com, bridgett.moore@usdoj.gov;Shannon.Patterson@usdoj.gov
- **Katerina Anna Tonkinson**   ktonkinson@bastamron.com, jmiranda@bastamron.com;sroque@bastamron.com
- **Stuart F Wilson-Patton**   stuart.wilson-patton@ag.tn.gov
- **Jeffrey Heath Wood**   jeff.wood@bakerbotts.com
- **Ryan C Zagare**   rzagare@miami-airport.com, rmartin@miami-airport.com
- **Zachary Z Zermay**   zach@zermaylaw.com

And on June 17, 2026, via U.S. Mail to (i) all parties that requested mail service pursuant to the terms of the *Second Amended Order Granting Trustee, Scott N. Brown's Second Ex Parte Motion for Entry of Order to Limit Notice and Establish Notice Procedures* (Dkt. No. 874), and (ii) all creditors that filed post-Conversion Date claims, as listed on the attached following pages.

By: */s/ Dana R. Quick*
Dana R. Quick, Esq.

19

4902-8823-0062, v. 4

RPMayer & Associates, LLC
N81 W5912 Orchard Drive
Cedarburg, WI 53012

James R. Tolzien
Chief Executive Officer
EALG Interim Solution, Inc. (f/k/a
Eastern Air Lines Group, Inc.)
1395 Brickell Avenue, Suite 960
Miami, Florida   33131

Vickie M. Duncan, Esq.
Oerlikon Surface Solutions,
Americas
Attn: Legal Dept.
1101 Prospect Avenue,
Westbury, NY 11590.

S. David Sheffman,Esq
Law office of Alexis Gonzalez,P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133

Three Brothers Family Office LLC
c/o Adam Greenberg
410 Park Avenue, 22nd Floor
New York, NY 10022

High Class Aero Inc.
6991 NW 82nd Ave
Bay 11
Medley, FL 33166

KMA ZUCKERT LLP
c/o Nicholas E. Pantelopoulos, Esq
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134

City of Philadelphia Law Department
Tax Litigation & Collections Unit
c/o Megan N. Harper
1401 JFK Blvd., 5th Fl.
Philadelphia, PA 19102

Miami-Dade Office of the Tax Collector
200 NW 2nd Avenue Suite #430
Miami, FL 33128

Josue E. Lopez
3703 Botanical Way
Sanford, FL 32773-6531

Magnum AirDynamics
c/o Shapiro Law
8551 West Sunrise Boulevard,
Plantation, FL 33322

Geoffrey T. Raicht, PC
99 Biltmore Avenue
Suite 122
Rye, NY 10580

Brent S. Furrow
885 Malibu Way
Edwardsville, IL 62025

Uniserv Aviation Inc
Saul Gonzalez
8522 NW 66th Street
Miami, FL 33166

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

James Steven Mueller
3332 Kings Church Road
Taylorsville, KY 40071

ROSARIO SEREI
808 PECAN RIDGE CIRCLE
KERNERSVILLE, NC 27284

Melissa Kaminski
124 ROQUEMORE RD
Clemmons, NC 27012

MIS Choice, Inc.
300 N Martingale Rd.
Ste 250
Schaumburg, IL 60173

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

Trevor Southard Reed
12929 MCFADDEN WAY
SAN ANTONIO, TX 78254

SEBR CENTREPORT 202, LLC
C/O DEEP RIVER COMMERCIAL
PROP
PO BOX 49579
GREENSBORO, NC 27419

USDA APHIS
250 MARQUETTE AVE
MINNEAPOLIS, MN 55401

ProDIGIQ, Inc.
26500 W Agoura Rd
Ste 102 796
Calabasas, CA 91302

PITTSBURGH PENGUINS LP
C/O MIKE DONADIO
1001 FIFTH AVENUE
PITTSBURGH, PA 15219

STS LINE MAINTENANCE
PO BOX 890927
CHARLOTTE, NC 28289-0927

AEROTECH MIAMI INC.
PO BOX 520657
MIAMI, FL 33152

Vector Airport Systems LLC
dba Vector PLANEPASS
280 Sunset Park Drive,
Herndon, VA 20170

PricewaterhouseCoopers LLP
Attn: Jill Bienstock, Senior
Managing Director
400 Campus Drive
Florham Park, NJ 07932

Jerreld Schilling
18211 Bulverde Rd #10304
San Antonio, TX, 78259

AERSALE, INC.
255 ALHAMBRA CIR STE 435
CORAL GABLES, FL 33134

Ford Motor Credit Company, LLC
Dept 55953 P.O. Box 55000
Detroit, MI 48255

Owl Creek Asset Management, L.P.,
its affiliated funds,and its subsidiary
AWL Leasing II, LLC
Carlton Fields PA J Lamoureux
PO Box 3239
Tampa, FL 33601

Charter Intelligence Pty Ltd
691 John Wesley Dobbs Ave NE
Ste v-133
Atlanta, GA 30312

Veryon, LLC
382 NE 191ST ST
Suite 42403
MIAMI, FL 33179

Rosario D. Serei
808 Pecan Ridge Circle
Kenersville, NC 27284

SEBR CENTREPORT 202, LLC
C/O DEEP RIVER COMMERCIAL
PROP
PO BOX 49579
GREENSBORO, NC 27419

SAVANNAH AIRPORT COMMISSION
400 AIRWAYS AVENUE
SAVANNAH, GA 31408

PNC BANK, N.A.
C/O ADAMS AND REESE LLP
ATTN: LAUREN A. BAIO, ESQ,
20 F. ST NW SUITE 500
WASHINGTON, DC 20001

Laats S.A.
15 calle b 7-24 zona 13 Aurora
Guatemala, Guatemala,
ZIP 01013

Uniserv Aviation Inc
Saul Gonzalez
8522 NW 66th Street
Miami, FL 33166

Uniserv Aviation Inc
Saul Gonzalez
8522 NW 66th Street
Miami, FL 33166

Abulfazl Alimardani
1119 Rivermeade dr
Hebron, KY 41048

Gerald McMillan
195 Knapdale Rd
Lumber Bridge, NC 28357

WILLIAM SINGLETON
445 WALNUT AVE
SAINT-LAMBERT QC J4P 2T5,
CANADA

Reno-Tahoe Airport Authority
P.O. Box 12490
Reno, NV 89510-2490

Karim Attar
110 Bonaventure Blvd, Apt 207
Weston, FL, 33326

STARR INDEMNITY & LIABILITY
COMPANY
399 PARK AVENUE
NEW YORK, NY 10022

Blackstone Alternative Credit Advisors
LP
and certain of its managed fun
c/o Sara L. Brauner, Esq.,
One Bryant Park
New York, NY 10036

LEE COUNTY PORT AUTHORITY
SW FLORIDA INT'L AIRPORT
1100 TERMINAL ACCESS RD
SUITE 8671
FORT MYERS, FL 33913-8899

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

TOTAL AIR GROUP
2456 WINCHESTER RD
HGR 14
MEMPHIS, TN 38116

CDW
Attn: Ronelle Erickson
200 N. Milwaukee Ave.
Vernon Hills, IL 60061

JANZAIR CONSULTING SERVICES,
INC.
4611 S. UNIVERSITY DR. #242
DAVIE, FL 33328

Maryland Aviation Administration
Attn: William C. Lindsey
P.O. Box 8766
BWI Airport, MD 21240

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

Wayne County Airport Authority
Miller Canfield
c/o Marc Swanson,
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226

Piedmont Triad Airport Authority
William O Cooke, Jr.
1000A Ted Johnson Parkway
Greensboro, NC 27409

UMB Bank N.A.,
solely as Owner Trustee
c/o Barbra R. Parlin, Esq.
Holland & Knight LLP,
787 Seventh Avenue, 31st Floor
New York, NY 10019

Wayne County Airport Authority
Miller Canfield
c/o Marc Swanson,
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226

Miami-Dade County Through Its Aviation
Department
Ryan C. Zagare, Esq.
PO Box 025504
Miami, FL 33102

Rhonda Sheppard Pepper
447 Kenville Green Court
Kernersville, NC 27284

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

Arkansas Department of Finance and
Administration
Revenue Legal Counsel
P.O. Box 1272, Rm. 2380
Little Rock, AR 72203-1272

Geoffrey T. Raicht, PC
99 Biltmore Avenue
Suite 122
Rye, NY 10580

Charter Solution LLC
429 E. Front Street
Florence, NJ 08518

Cooley LLP
Attn: Robert L. Eisenbach III
3 Embarcadero Center, 20th Fl
San Francisco, CA 94111

Melissa Kaminski
124 ROQUEMORE RD
Clemmons, NC 27012

Precise Aviation, LLC
c/o Kilpatrick Townsend & Stockton
LLP
500 W. Madison St., Ste 3700
Chicago, IL 60661

City of Philadelphia – Department of
Aviation
Law Department - Tax & Revenue Unit
Philadelphia, PA 19102

U.S. Customs and Border Protection
Attn: Rev-Bankruptcy-203Ja
8899 E. 56th Street
Indianapolis, IN 46249

NM Taxation & Revenue Department
PO Box 8575
Albuquerque, NM 87198-8575

OH Capital Assets, Inc.
(ADMINISTRATIVE)
c/o Leanne Prendergast
Pierson Ferdinand LLP,
12620 Jacksonville, FL 32246

Carlos Lopez
950-900 Howe Street, 9th Floor
Vancouver, BC V6Z2M4

Tennessee Department of Revenue
c/o Attorney General
POB 20207
Nashville., TN 37202-0207

AEROSPHERE AVIATION SERVICES, INC.
7619 BOEING DRIVE
GREENSBORO, NC 27409

Blackstone Alternative Credit Advisors LP
and certain of its managed fun c/o
Sara L. Brauner, Esq.,
One Bryant Park
New York, NY 10036

TA Connection IL, LLC
f/k/a Travelliance, Inc.
Corpay, Inc. c/o Sean C. Kirk
5301 Maryland Way
Brentwood, TN 37027

Piedmont Triad Airport Authority
William O Cooke, Jr.
1000A Ted Johnson Parkway
Greensboro, NC 27409

Wayne County Airport Authority Miller
Canfield
c/o Marc Swanson
150 W. Jefferson Ave.,
Detroit, MI 48226

Avionica, LLC.
Law Office of Alexis Gonzalez PA
3162 Commodore Plaza Suite 3E
Coconut Grove, FL 33133

TexasWorld Service Company, Inc.
dba World Service Company
PO Box 62225
Houston, TX 77205

Aircrafters, Inc.
Brian Dubreuil
14 Tinker Avenue
Manchester, NH 03053

PricewaterhouseCoopers LLP
Attn: Jill Bienstock, Senior
Manager Director
400 Campus Drive
Florham Park, NJ 07932

Garda Canada Security Corporation
2300 Emile-Belanger Street
Montreal, Quebec H4R 3J4 Canada

Datasite LLC
The Baker Center
733 S. Marquette Ave, Suite 60
Minneapolis, MN 55402

Wayne County Airport Authority
Miller Canfield
c/o Marc Swanson,
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226

Latitude Aero LLC
237-A Burgess Road
Greensboro, NC 27409

UMB Bank N.A., solely as Owner Trustee
c/o Barbra R. Parlin, Esq.
Holland & Knight LLP,
787 Seventh Avenue, 31st Floor
New York, NY 10019

Mid-Ohio Aviation Services LLC
1923 Beacon Street
Washington Court House, OH
43160

Hector Echevarria
15 Berea Ct.
Greensboro, NC 27406

Tennessee Department of Revenue
c/o Attorney General
PO Box 20207
Nashville, TN 37202-0207

CommuteAir LLC
24950 Country Club Blvd. #200
North Olmsted, OH 44070

Caribbean Air Navigation & Advisory
Services LTD
POB 2163
National Mail Centre
Golden Grove Road, Piarco

CSI AEROSPACE INC
2020 WEST DETROIT STREET
BROKEN ARROW, OK 74012

Kathleen Gentile
504 5th Ave N
Kure Beach, NC 28449

Kathleen Gentile
504 5th Ave N
Kure Beach, NC 28449

Media Brewer LLC
6615 Ashton Park Dr.
Oak Ridge, NC 27310

Fox Rothschild LLP
Attn: M. Chovanes, Esq.
2000 Market Street, 20th Floor
Philadelphia, PA 19103

Arkansas Department of Finance and
Administration
Revenue Legal Counsel
P.O. Box 1272, Rm. 2380
Little Rock, AR 72203-1272

Aero Safety Graphics Inc.
6104 208th Ave. NE
Redmond, WA 98053

JAC Aviation Services, LLC
2670 Redington Rd
Hellertown, PA 18055-3334

Shred-South, LLC
626 Signal Hill Dr. Ext
Statesville, NC 28625

Kathleen Gentile
504 5th Ave N
Kure Beach, NC 28449

Louisville/Jefferson County Metro
Government
c/o Daniel T. Albers, Jr.
Jefferson County Attorney's Office
200 S. Fifth St., Suite 200N
Louisville, KY 40202

Steven Thomas Wustenberg
P.O. Box 25992
Tempe, AZ 85285-85285

Precise Aviation, LLC
c/o Kilpatrick Townsend & Stockton
LLP
500 W. Madison St., Ste 3700
Chicago, IL 60661

Satcom Direct Inc
1050 Satcom Lane
Melbourne, FL 32940

Transportation Security Administration
Department of Homeland Security
6595 Springfield Center Drive
Springfield, VA 20598-6014

City of Philadelphia - Department of Aviation
Law Department - Tax & Revenue
Philadelphia, PA 19102

Philadelphia Terminal and Equipment
Company
2 International Plaza
Suite 335
Philadelphia, PA 19113

San Diego County Treasurer-Tax
Collector
1600 Pacific Hwy Room 162
San Diego, CA 92101

NM Taxation & Revenue Department
PO Box 8575
Albuquerque, NM 87198-8575

State of Florida- Department of Revenue
Fredrick F. Rudzik, Esq
P.O. Box. 6668
Tallahassee, FL 32314-6668

Tennessee Department of Revenue
c/o Attorney General
P.O. Box 20207
Nashville, TN 37202-0207

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

Ford Motor Credit Company, LLC
c/o AIS Portfolio Services, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

AIG Property Casualty, Inc.
Attn: Kevin J. Larner, Esq
28 Liberty Street, Floor 22
New York, NY 10005

00814892.DOCX

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement"), dated as of the  15th  day of June, 2026, is by and between, on the one hand, (i) Scott N. Brown, solely in his capacity as the duly appointed Chapter 7 Trustee (the "Trustee") of the substantively consolidated bankruptcy estates of: (a) AeroTech Miami Inc. d/b/a iAero Tech (Case No. 23-17503); (b) AeroThrust Delta PBH, LLC (Case No. 23-17504); (c) AeroThrust Holdings Aircraft and Engine Leasing, LLC (Case No. 23-17505); (d) AeroThrust Holdings Leasing, LLC (Case No. 23-17506); (e) iAero 11 Investments LLC (Case No. 23-17507); (f) iAero 11B Investments LLC (Case No. 23-17508); (g) iAero Group Bidco Inc. (Case No. 23-17509); (h) iAero Group Holdco 6 LLC (Case No. 23 17510); (i) iAero Group Intermediate Inc. (Case No. 23-17512); (j) iAero Group Parent LLC (Case No. 2317513); (k) iAero Thrust Engine Test Center, LLC (Case No. 23-17514); (l) iAero Thrust LLC (Case No. 23-17515); (m) JAM Aerospace Parts, LLC (Case No. 23-17516); (n) New Swift Air Holdings, L.L.C. (Case No. 23-17517); (o) Swift Air, L.L.C. d/b/a iAero Airways (Case No. 23-17518); and (p) Swift Air Travel, LLC (Case No. 23-17519) (together, the "Debtors"); and, on the other hand,

"Prospective Defendants").   The Trustee and the Prospective Defendants shall collectively be referred to herein as the "Parties," and each individually, a "Party."

## RECITALS

WHEREAS, on September 19, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") commencing the Debtors' bankruptcy cases (the "Bankruptcy Cases");

WHEREAS, on September 20, 2023, the Debtors filed their *Ex Parte Motion for Joint Administration* [ECF No. 5];[1] and shortly thereafter, the Bankruptcy Court entered its *Order Granting Debtors' Ex Parte Motion for Joint Administration* [ECF No. 14];

WHEREAS, from the Petition Date through May 1, 2024 (the "Conversion Date"), the Debtors operated as debtors in possession.

WHEREAS, on May 1, 2024, following a sale of substantially all of the Debtors' assets,[2] the Bankruptcy Court entered its *Agreed Order Granting Agreed Motion of the Debtors and Committee for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under*

---

[1] Unless otherwise stated herein, all ECF Nos. relate to the docket entries in the Lead Case, *In re AeroTech Miami Inc. d/b/a iAero Tech*, Case No. 23-17503-RAM.

[2] *See Order (I) Approving Stalking Horse APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens Except for Permitted Liens and Assumed Liabilities, and (Ill) Granting Related Relief* [ECF No. 602] (the "Sale Order").

1

*Chapter 7 of the Bankruptcy Code* [ECF No. 625], and subsequently the Trustee was appointed as Chapter 7 trustee of the Debtors' bankruptcy estates (collectively, the "Estates") [ECF No. 626];

WHEREAS, on August 1, 2025, the Trustee filed his *Motion for Substantive Consolidation of Jointly Administered Debtors* [ECF No. 891]; and on September 3, 2024, the Bankruptcy Court entered its *Order Granting Trustee, Scott N. Brown's Motion for Substantive Consolidation of Jointly Administered Debtors Effective as of the Conversion Date, May 1, 2024* [ECF No. 913];

WHEREAS, prior to the commencement of the Bankruptcy Cases, the Debtors purchased the following Directors' and Officers' Liability insurance policies:
- Chubb Illinois Union Insurance Co. policy no. G46772015 003;
- Everest EX Excess, policy no. PC5EX00119-201; and
- Chubb ACE American Insurance, policy no. DOX G46771977 003

(together, Chubb and Everest are the "Insurers" and such policies, the "Policies");

WHEREAS, on July 25, 2025, the Trustee served a notice of claims on the Prospective Defendants and the Insurers (the "Notice"), which included a draft complaint (the "Draft Complaint") alleging certain causes of action against certain of the Prospective Defendants (the "Claims");

WHEREAS, on September 17, 2025, the Parties entered into that certain *Tolling Agreement*, whereby, among other things, the Parties agreed any applicable SOL[3] or other applicable Timing Defense,[4] to the extent any applicable limitation period had not already expired, was tolled from the date of the Tolling Agreement through October 3, 2025 (the "Tolling Period"), with respect to the Claims to allow the Parties sufficient time to discuss settlement options and/or otherwise resolve disputes among the Parties;

WHEREAS, the Parties subsequently agreed to several extensions of the *Tolling Agreement*, as follows:
- *First Amendment to Tolling Agreement*, dated October 1, 2025, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through October 17, 2025;
- *Second Amendment to Tolling Agreement*, dated October 15, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through October 31, 2025;
- *Third Amendment to Tolling Agreement*, dated October 29, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through April 30, 2026;

---

[3] Defined as the various statutes of limitation governing the Claims in the Notice and Draft Complaint. [*See* Tolling Agreement, pg. 2].

[4] Defined as including "any defenses or affirmative defenses to Trustee's claims and/or causes of action that the Prospective Defendants may have to the extent based upon (1) any statute of limitations; (2) laches, waiver, or estoppel; and/or (3) any failure of the Trustee to institute or commence litigation or other legal proceedings within some specified period, before a specified date, or before the happening of a specified event." [*See* Tolling Agreement, ¶ 1d].

4936-1350-1877, v. 4

- *Fourth Amendment to Tolling Agreement*, dated April 24, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through May 15, 2026;
- *Fifth Amendment to Tolling Agreement*, dated May 14, 2026, which, among other things, extended the Tolling Period and expiration date of the Tolling Agreement to and through May 22, 2026; and
- *Sixth Amendment to Tolling Agreement*, dated May 21, 2026, which among other things, extended the Tolling Period to "the earliest of (i) the date on which an order approving the settlement agreement becomes final and non-appealable, (ii) 10 days after an order denying approval of the settlement agreement becomes final an non-appealable; or (iii) October 23, 2026."

WHEREAS, the Parties agreed to engage in pre-suit mediation under the guidance and oversight of the Honorable Shelley C. Chapman (Ret.) as mediator (the "Mediator") in respect of the Claims and various issues among the Parties, further to which, the Trustee voluntarily provided the Prospective Defendants and the Insurers with a significant production of documents relevant to the Claims;

WHEREAS, on March 16, 2026, the Parties attended an in-person mediation with the Mediator in New York, NY, which session was adjourned to allow continued settlement discussions among the Parties;

WHEREAS, thereafter, the Parties, through the Mediator, continued to engage in extended good faith and arms-length settlement discussions;

WHEREAS, as a result of such negotiations, the Parties have reached the settlement embodied herein, pursuant to which they desire to settle and fully and finally resolve all disputes, claims, and actions by and between the Trustee and the Estates, on the one hand; and the Prospective Defendants, on the other, to, among other things, avoid the cost and uncertainty of litigation;

WHEREAS, the Prospective Defendants deny any and all liability in connection with the Claims alleged in the Notice and Draft Complaint, and dispute that they are liable in any manner to the Trustee or the Estates;

NOW THEREFORE, in consideration of the mutual covenants and promises herein, all of which are deemed sufficient, the Parties agree as follows:

**AGREEMENT**

1. **Recitals.**  Each of the above recitals is acknowledged and incorporated as part of this Agreement.

4936-1350-1877, v. 4

2. **<u>Conditions Precedent to Effectiveness of Agreement.</u>**

   a. This Agreement shall only be effective upon entry of a Final Order (as defined below) by the Bankruptcy Court approving this Agreement (the "Effective Date"). Within ten days after the full execution of this Agreement by all Parties, the Trustee shall file a motion for approval of this Agreement with the Bankruptcy Court, which motion and related form of order have been shared with the Prospective Defendants and the Insurers for review.

   b. As used in this Agreement, a "Final Order" means an order or judgment of the Bankruptcy Court that is final and non-appealable because: (a) the time for appeal or petition for review or rehearing has expired and no appeal or petition for rehearing or review has been timely filed; or (b) the order is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which an appeal, petition for rehearing, review or certiorari could have been taken has finally expired.

   c. In the event the Agreement is not approved by a Final Order, the terms of this Agreement shall become null and void, and the Parties shall be returned to their *status quo ante*.

   d. This Agreement shall not become effective unless and until a separate insurance release agreement between and among the Prospective Defendants and the Insurers has been fully executed by such parties.  A copy of which release agreement shall be provided to the Trustee.

3. **<u>Payment Terms.</u>**  Subject only to entry of a Final Order of the Bankruptcy Court approving this Agreement, the Prospective Defendants shall cause the Insurers to pay, on behalf of all Prospective Defendants, to the Trustee the aggregate sum of FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($5,500,000.00 USD) (the "Settlement Payment").  The Settlement Payment shall be issued by check or ACH/EFT payment within 20 days after the later of: (a) the entry of a Final Order; and (b) the Insurers' receipt of a completed Form W-9 for the payee and all necessary payment instructions (including the name of the payee and mailing address for payment by check).  The Parties acknowledge that the Settlement Payment is made in consideration to settle and obtain releases among the Parties as set forth herein.

4. **<u>Releases.</u>**  Upon clearance of the Settlement Payment in the Trustee's account (the "Release Date"), the following releases shall become effective without the need for the execution and delivery of any additional documentation or the entry of any additional orders:

   a. ***Trustee Release of Prospective Defendants.***  The Trustee, solely in his capacity as Chapter 7 Trustee of the Debtors and the Estates,  releases and forever discharges each of the Prospective Defendants and each of their respective insurers (including, but not limited to, the Insurers and their counsel in connection with the Notice and Draft Complaint), employees, representatives, agents, professionals (including attorneys and accountants) and each of their respective employees, as well as any other insured

4

persons covered by the terms of the Policies (collectively, the "Prospective Defendants Released Parties"), from any and all actions, arbitrations, claims, including, without limitation the Claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether contractual or extracontractual or for bad faith, insured or uninsured, whether known or unknown, and whether now accrued or hereafter maturing, which the Trustee ever had, now has or hereafter can, shall or may have against any of the Prospective Defendants Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, related to, arising out of, or in connection with the Debtors, the Bankruptcy Cases, or the Estates.  For the avoidance of doubt, the Trustee hereby waives any and all rights to seek surcharge, disgorgement, or administrative expense claims against any Prospective Defendant Released Party, and covenants that no such claims shall be pursued on behalf of the Estates following the Effective Date of this Agreement.  Notwithstanding the breadth of the foregoing release, nothing contained in this Section or elsewhere in this Agreement shall release the Prospective Defendants from their obligations set forth in this Agreement.

b. ***Prospective Defendants Released Parties' Release of Trustee and Estates.***  The Prospective Defendants each release and forever discharge the Trustee, in his capacity as Chapter 7 Trustee of the Debtors and the Estates, and his employees, representatives, agents, professionals (including attorneys and accountants), and each of their respective employees (collectively, the "Trustee Released Parties"),  from any and all actions, arbitrations, claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Prospective Defendants ever had, now has or hereafter can, shall or may have against any of the Trustee Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, related to, arising out of or in connection with the Debtors, the Bankruptcy Cases, the Estates, or the Trustee's administration of the Estates.  For the avoidance of doubt, the Prospective Defendants also waive any proofs of claim filed by them or on their behalf in the Bankruptcy Cases or any scheduled claims, all of which shall be deemed to be disallowed upon the Effective Date of this Agreement, and each of the Prospective Defendants agree that they shall be entitled to no distribution from the Estates.  For the avoidance of doubt, the Prospective Defendants hereby waive any and all right to seek surcharge, disgorgement, or administrative expense claims against any Trustee

5

Released Party, and covenant that no such claim shall be pursued on behalf of the Prospective Defendants following the Effective Date of this Agreement. Notwithstanding the breadth of the foregoing release, nothing contained in this Section or elsewhere in this Agreement shall release the Trustee from his obligations set forth in this Agreement.

c. ***Mutual Release By and Between Prospective Defendants Released Parties.*** The Prospective Defendants each release and forever discharge each and every other Prospective Defendant, and each of their respective employees, representatives, agents, professionals (including attorneys and accountants) and each of their respective employees (collectively, the "Cross Released Parties"), from any and all actions, arbitrations, claims, counterclaims, crossclaims, suits, demands, obligations, violations, charges, duties, proceedings, losses, omissions, liabilities, debts, disputes, dues, sums of money, costs, attorneys' fees, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages (actual, statutory, and punitive), judgments, expenses, executions, liens and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Prospective Defendants ever had, now has or hereafter can, shall or may have against any of the Cross Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, related to, arising out of, or in connection with the Debtors, the Bankruptcy Cases, the Estates, the Claims, the subject matter of this Agreement, or the Trustee's administration of the Estates. Notwithstanding the breadth of the foregoing release, nothing contained in this Section or elsewhere in this Agreement shall release any Prospective Defendant from their obligations set forth in this Agreement.

d. The Insurers agree that they will not file a proof of claim, or in any other way seek recovery or recoupment of the Settlement Payment or defense costs paid in this matter from the Debtors or the Estate.

5. **Notices.** Any and all notices, consents, approvals, offers, elections, and other communications required or permitted under this Agreement shall be deemed adequately given only if in writing and the same shall be delivered either by (i) email; or (ii) in hand, or Federal Express or similar expedited commercial carrier, addressed to the recipient of the notice, postpaid, and/or with all freight charges prepaid and marked for next Business Day delivery as follows:

a. **To Trustee:**    Brett M. Amron, Esq.
Dana R. Quick, Esq.
Katerina Tonkinson, Esq.
BAST AMRON LLP
One Southeast Third Ave., Ste. 2410
Miami, FL 33131
Email: bamron@bastamron.com
           dquick@bastamron.com

6

4936-1350-1877, v. 4

ktonkinson@bastamron.com

b.  Christopher Oprison, Esq.
Michael J. McGuinness, Esq.
R. Craig Martin, Esq.
DLA PIPER LLP (US)
200 S. Biscayne Blvd., #2500
Miami, FL 33131
Email: chris.oprison@dlapiper.com
michael.mcguinness@dlapiper.com
craig.martin@dlapiper.com

c.  Rilyn Carnahan, Esq.
Michael R. Bakst, Esq.
LIPPES MATHIAS LLP
4420 Beacon Circle
West Palm Beach, FL 33131
Email: rcarnahan@lippes.com
        mbakst@lippes.com

-and-

Beth-Ann Krimsky
GREENSPOON MARDER, LLP
200 E. Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301
Email: beth-ann.krimsky@gmlaw.com

d.  Philip C. Dublin, Esq.
Sara L. Brauner, Esq.
Abid Qureshi, Esq.
AKIN GUMP STRAUSS HAUER & FELD, LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Email: pdublin@akingump.com
        sbrauner@akingump.com
        aqureshi@akingump.com

All communications to be sent hereunder shall be deemed to have been given for all purposes of this Agreement upon the date and time of transmission if sent by email or delivered by hand, or one business day after being delivered to the recipient by Federal Express or similar expedited commercial carrier.

7

4936-1350-1877, v. 4

6. **Compromise of Disputed Claim/Demand; No Admission of Liability.** Each Party acknowledges that the settlement and compromise embodied in this Agreement is a compromise of the matters addressed herein. Nothing in this Agreement, nor any act (including, but not limited to, the execution of this Agreement and/or the performance of obligations under this Agreement) of any Party, nor any transaction occurring between the Parties prior to the date hereof, is or may be treated, construed, or deemed as an admission by any other Party of any liability, fault, or responsibility of any kind to any Party or to any person, as to any claim, demand or dispute, for any purpose whatsoever; and all such liability, fault, and responsibility of any kind being expressly denied.

7. **No Modification.** This Agreement constitutes the complete understanding among the Parties and may not be modified, amended, changed, discharged or terminated orally, except in writing signed by all of the Parties hereto.

8. **Representations and Warranties.** Each Party acknowledges, represents, warrants and confirms the following:

   a. They have carefully read and understand the effect of this Agreement and had the assistance of legal counsel, if desired, in carefully reviewing, discussing and considering all terms of this Agreement;

   b. Their execution of this Agreement is not based on reliance upon any representation, understanding or agreement not expressly set forth herein; and

   c. The Parties execute this Agreement as their free and voluntary act, without any duress, coercion, or undue influence exerted by or on behalf of any other Party. All Parties executing this Agreement have full authority to execute the same.

   d. Each of the attorneys executing this Agreement or any related settlement documents on behalf of any Party or Parties hereby warrants and represents that they have been authorized to do so by the Party or Parties they represent.

9. **Cooperation; Drafting; Interpretation**. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement, and any ambiguities or uncertainties herein, shall be equally and fairly interpreted and construed without reference to the identity of the Party or Parties preparing and drafting this Agreement on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of this Agreement, or have had equal opportunity to do so. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith and reflect a resolution that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel. The Parties and their respective agents, officers, executives, representatives, assigns, parent companies, subsidiaries, affiliates, heirs and successors shall do all things and shall execute and deliver all documents, instruments, and other papers as may be reasonably necessary or convenient to fully consummate the terms of this Agreement in accordance with the terms and conditions set forth herein.

4936-1350-1877, v. 4

10.      **Breach**.  The violation or default or, or the failure of any Party to fulfill, any term or condition or other obligation under this Agreement within the timeframes specified, time being of the essence, shall constitute a Breach of this Agreement.  In the event of a Breach, or a perceived Breach, the Party claiming Breach must engage in a good faith attempt to resolve all issues by first notifying the other Party of the Breach or perceived Breach (the "Notice of Breach") specifying the nature of the dispute or disagreement.  If an agreement or resolution has not been reached after ten (10) business days from receiving the Notice of Breach, the Party claiming Breach may commence an action or proceeding to enforce this Agreement and all such other relief afforded by this Agreement.

11.      **Counterparts.**  This Agreement may be executed in one or more counterparts and all counterparts so executed shall constitute one agreement binding on all the Parties hereto, notwithstanding that all Parties are not signatories to the original or the same counterpart.  A signature transmitted electronically shall have the same force and effect as an original signature.

12.      **No Assignment.**  Each Party hereby represents and warrants to the other Parties that it has made no assignment, and hereafter will make no assignment of any claim, cause in action, right of action, or any other right released pursuant to this Agreement.

13.      **Confidentiality.**  The Parties shall use their objectively reasonable efforts to keep confidential the nature of the Claims and the underlying subject matter, other than as required by any applicable law, rule, professional standard, regulation, policy statement, court order, legal, judicial, or administrative process, or other similar processes (whether by oral questions, interrogatories, requests for information or documents in legal or regulatory proceedings, subpoena, civil investigative demand, or other similar process).  **Under no circumstance shall any Party disclose the identity of any Prospective Defendant Released Party in a public filing, unless required by law.**  Notwithstanding anything contained herein to the contrary, the Parties agree and acknowledge that the Trustee may file the instant Agreement as an attachment to the Approval Motion, with the names of the Prospective Defendants redacted.

14.      **Final Integrated Agreement; Binding Effect.**  Upon full and complete execution by each Party, this Agreement shall be and will constitute the entire, final, and binding understanding among the Parties regarding the matters set forth herein, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, in each case regarding the Claims and related disputes among the Parties are expressly superseded hereby and are of no further force and effect.  Each Party acknowledges that it has not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement in deciding to execute this Agreement.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective agents, representatives, and assigns.

15.      **Severability; Waiver.**  In the event that any provision of this Agreement other than the obligation in paragraph 3 above of the Insurers to make the Settlement Payment on behalf of all Prospective Defendants and the releases in paragraph 4, should be held to be void, voidable, or

9

unenforceable, the remaining portions hereof shall remain in full force and effect.  No Breach of this Agreement or of any terms and conditions herein may be waived except by an express written waiver executed by the Parties.  Waiver of any terms and conditions shall not be deemed a waiver of such terms and conditions for the future or any other terms and conditions of this Agreement.

16.    **Responsibility for Tax Liability.**  The Settlement Payment is a gross payment that may be subject to applicable taxes.  The Trustee acknowledges that neither the Insurers nor the Prospective Defendants have made any representations about the tax consequences of the Settlement Payment set forth herein.

17.    **Miscellaneous.**

   a.  Paragraph headings used herein are for convenience only and shall not be construed as controlling the scope of any provision hereof.

   b.  The Agreement shall be governed by and construed in accordance with the laws of the State of Florida and the rules and regulations promulgated under the authority thereof.  Any claims based on an alleged breach of this Agreement or to interpret the provisions of this Agreement shall be brought in the Bankruptcy Court, and the Parties each irrevocably agree that the Bankruptcy Court shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce, and implement the terms of this Agreement.  To that end, each Party knowingly and voluntarily waives the right to trial by jury in the event of any claim or dispute between them related to enforcement of this Agreement and agree that such dispute shall be heard as a bench trial.

   c.  Time is of the essence of this Agreement.

   d.  Each Party agrees to bear its own respective attorneys' fees, costs and expenses incurred in connection with the Bankruptcy Cases, including, but not limited to, the costs incurred in connection with the negotiation and preparation of this Agreement.

   e.  This Agreement shall inure to the exclusive benefit of and be binding upon the Parties hereto as well their successors and assigns, estates, beneficiaries, executors, heirs and personal representatives.  Nothing in this Agreement shall be construed as granting, vesting, creating, or conferring any right of action or any other right or benefit upon any other Party.

   f.  For the avoidance of doubt, none of the provisions of this Agreement, including, but not limited to the releases set forth in Paragraph 4 above, shall circumvent or limit the releases authorized by the Bankruptcy Court in the Sale Order, which releases remain in full force and effect.

   g.  Each of the Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement.  Without limiting the foregoing, the Parties shall not take, or

10

cause any persons or entities to take, any actions calculated or intended to interfere with or decrease the likelihood of obtaining such approval.

h. The Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein.

The Parties hereto hereby agree to the terms of this Agreement as set forth above.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK,
SIGNATURE PAGE FOLLOWS]

11

4936-1350-1877, v. 4

AGREED TO AND ACCEPTED BY:

**On behalf of Scott N. Brown, solely in his capacity as Chapter 7 Trustee of the Debtors:**

**BAST AMRON LLP**

By: _____
Brett M. Amron, Esq.
Dana R. Quick, Esq.
Katerina Tonkinson, Esq.
Bast Amron LLP
1 SE Third Ave., Suite 2410
Miami, FL 33131
Tel: (305) 379-7904
Email: bamron@bastamron.com
       dquick@bastamron.com
       ktonkinson@bastamron.com

**On behalf of the Prospective Defendants:**

| | |
|---|---|
| **DLA PIPER LLC (US)** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| | |
| By: _____ | By: _____ |
| Christopher Oprison, Esq. | Philip C. Dublin, Esq. |
| Michael J. McGuinness, Esq. | Sara L. Brauner, Esq. |
| R. Craig Martin, Esq. | Abid Qureshi, Esq. |
| 200 S. Biscayne Blvd., #2500 | One Bryant Park |
| Miami, FL 33131 | Bank of America Tower |
| Email: chris.oprison@us.dlapiper.com | New York, NY 10036 |
| michael.mcguinness@us.dlapiper.com | Email: pdublin@akingump.com |
| craig.martin@dlapiper.com | sbrauner@akingump.com |
| | aqureshi@akingump.com |

12

4936-1350-1877, v. 2

AGREED TO AND ACCEPTED BY:

**On behalf of Scott N. Brown, solely in his capacity as Chapter 7 Trustee of the Debtors:**

**BAST AMRON LLP**


By: _____
Brett M. Amron, Esq.
Dana R. Quick, Esq.
Katerina Tonkinson, Esq.
Bast Amron LLP
1 SE Third Ave., Suite 2410
Miami, FL 33131
Tel: (305) 379-7904
Email: bamron@bastamron.com
        dquick@bastamron.com
        ktonkinson@bastamron.com


**On behalf of the Prospective Defendants:**

**DLA PIPER LLP (US)**                          **AKIN GUMP STRAUSS HAUER & FELD LLP**


By: _____       By: _____
Christopher Oprison, Esq.                   Philip C. Dublin, Esq.
Michael J. McGuinness, Esq.                 Sara L. Brauner, Esq.
R. Craig Martin, Esq.                       Abid Qureshi, Esq.
200 S. Biscayne Blvd., Suite 2500           One Bryant Park
Miami, FL 33131                             Bank of America Tower
Email: chris.oprison@dlapiper.com           New York, NY 10036
        michael.mcguinness@dlapiper.com     Email: pdublin@akingump.com
        craig.martin@dlapiper.com                   sbrauner@akingump.com
                                                    aqureshi@akingump.com

12

AGREED TO AND ACCEPTED BY:

**On behalf of Scott N. Brown, solely in his capacity as Chapter 7 Trustee of the Debtors:**

**BAST AMRON LLP**

By: _____
Brett M. Amron, Esq.
Dana R. Quick, Esq.
Katerina Tonkinson, Esq.
Bast Amron LLP
1 SE Third Ave., Suite 2410
Miami, FL 33131
Tel: (305) 379-7904
Email: bamron@bastamron.com
        dquick@bastamron.com
        ktonkinson@bastamron.com

**On behalf of the Prospective Defendants:**

| **DLA PIPER LLC (US)** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
|---|---|
| By: _____ | By: _____ |
| Christopher Oprison, Esq. | Philip C. Dublin, Esq. |
| Michael J. McGuinness, Esq. | Sara L. Brauner, Esq. |
| R. Craig Martin, Esq. | Abid Qureshi, Esq. |
| 200 S. Biscayne Blvd., #2500 | One Bryant Park |
| Miami, FL 33131 | Bank of America Tower |
| Email: chris.oprison@us.dlapiper.com | New York, NY 10036 |
|         michael.mcguinness@us.dlapiper.com | Email: pdublin@akingump.com |
|         craig.martin@dlapiper.com |         sbrauner@akingump.com |
|  |         aqureshi@akingump.com |

12

4936-1350-1877, v. 2

**LIPPES MATHIAS LLP**

By: _Rilyn Carnahan_
Rilyn Carnahan, Esq.
Michael R. Bakst, Esq.
200 S. Biscayne Blvd., #2500
West Palm Beach, FL 33407
Email: rcarnahan@lippes.com
        mbakst@lippes.com

13

4936-1350-1877, v. 4

# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                     Chapter 7 Cases (Converted)

AEROTECH MIAMI INC. d/b/a iAero Tech, et          Case No. 23-17503-RAM
al.,                                                      (Substantively Consolidated)

        Debtors.

_____/

**ORDER GRANTING TRUSTEE, SCOTT N. BROWN'S MOTION (A) TO
APPROVE AGREEMENT TO COMPROMISE CONTROVERSY AND
MUTUAL GENERAL RELEASE BETWEEN TRUSTEE AND FORMER
OFFICERS AND DIRECTORS OF DEBTORS, AND (B) FOR PAYMENT OF
CONTINGENCY FEE TO BAST AMRON LLP FROM SETTLEMENT FUNDS**

**THIS CAUSE** having come before the Court for hearing on June __ 2026 at ___ __.m.

upon *Trustee, Scott N. Brown's Motion (A) to Approve Agreement to Compromise Controversy*

*and Mutual General Release Between Trustee and Former Officers and Directors of Debtors, and*

*(B) for Payment of Contingency Fee to Bast Amron LLP From Settlement Funds* (ECF No. ___)

(the "Motion"),[1] and the Court, having reviewed (i) the Motion; (ii) the Settlement Agreement attached at Exhibit A to the Motion (the "Agreement"); (iii) this Court's *Order Granting Chapter 7 Trustee, Scott N. Brown's Motion to Employ Brett M. Amron, Esquire and Bast Amron LLP as Special Litigation Counsel to the Estate Effective as of August 20, 2024* (ECF No. 819) (the "Special Counsel Employment Order"), and (iv) the Court file; having heard argument of Trustee's counsel; having heard and accepted the Trustee's proffer; having noted that no objections to the relief sought in the Motion were filed or made at the hearing; being otherwise fully advised in the premises; and for the reasons set forth on the record and in the Motion, which are incorporated herein by reference, the Court finds:

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and authority to enter into this Order pursuant to 11 U.S.C. § 105(a);

B.     The form and means of the notice of the Agreement and the Motion are hereby determined to have been good and sufficient notice to all persons and entities entitled to notice pursuant to this Court's *Second Amended Order Granting Trustee, Scott N. Brown's Second Ex Parte Motion for Entry of Order to Limit Notice and Establish Notice Procedures* (ECF No. 874) (the "Order Limiting Notice") and any other notice requirement;

C.     The Court has been apprised of the negotiations that preceded the execution of the Agreement, including an in-person mediation conducted  by the Honorable Shelley C. Chapman (Ret.) (the "Mediator") in New York, NY, which settlement discussions continued for several weeks after the in-person mediation session adjourned, and finds that the Agreement is a result of arms-length bargaining between the Settlement Parties facilitated by the Mediator and resulting

---

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion and in the Agreement attached to the Motion.

2

from a mediator's proposal, and represents a good faith compromise and resolution of the matters settled. There is no evidence that the Agreement is the result of collusion among the parties; and

D.      The legal and factual basis set forth in the Motion and on the record establish that the Agreement represents a fair, reasonable, and adequate resolution of the claims among the parties, and the Court finds that the Agreement is fair and equitable with respect to creditors in this substantively consolidated bankruptcy case, is in the best interest of this substantively consolidated bankruptcy estate, and otherwise meets the criteria set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir. 1990). Accordingly, it is

**ORDERED** as follows:

1.      The Motion is **GRANTED** in its entirety.

2.      The Agreement is **APPROVED** in its entirety on the terms and conditions set forth in the Agreement, which terms and conditions are incorporated herein by reference.

3.      Without limiting the generality of the foregoing, pursuant to the terms of the Agreement, the Former D&Os are directed to cause the Insurers to pay to the Trustee the sum of $5,500,000.00 in cleared funds (the "Settlement Amount") on the payment terms set forth in the Agreement.

4.      Without limiting the generality of the foregoing, pursuant to the terms of the Special Counsel Employment Order, the Trustee is authorized to disburse the contingency fee of $1,925,000.00 (35% of the Settlement Amount) to Bast Amron LLP upon receipt of the Settlement Amount, without further order of this Court.

5.      Without limiting the generality of the foregoing: (a) the Settlement Parties and the Insurers are authorized to take any and all actions necessary to effectuate the terms of the Agreement; and (b) the Trustee is authorized, but not directed, to take such actions, and execute

such documents and instruments, as he deems reasonable, necessary and/or desirable to effectuate the Agreement.

6.      This Court retains sole and exclusive personal and subject matter jurisdiction over the parties to enforce and interpret the terms of this Order and the Agreement, and resolve any and all disputes arising from or related to same.

###

Submitted by:

Dana R. Quick, Esq.
BAST AMRON LLP
*Special Litigation Counsel to the Trustee, Scott N. Brown*
One Southeast Third Avenue, Suite 2410
Miami, Florida  33131
Telephone:  305.379.7904
Email: dquick@bastamron.com

Copy furnished to:
Dana R. Quick, Esq.

Attorney Quick is hereby directed to serve a copy of this Order on all interested parties entitled to notice pursuant to the Court's *Second Amended Order Granting Trustee, Scott N. Brown's Second Ex Parte Motion for Entry of Order to Limit Notice and Establish Notice Procedures* (ECF No. 874) and file a Certificate of Service.

4920-8927-6085, v. 4